## Case No. 3,767.

DELAWARE R. CO. v. PRETTYMAN et al.

[17 Int. Rev. Rec. 99.]

Circuit Court, D. Delaware.    Oct. Term, 1872.

INTERNAL REVENUE — ENJOINING COLLECTION — JURISDICTION — IRREGULARITIES OF ASSESSOR— CONSTITUTIONALITY OF LAW.

1. An assessor of internal revenue acts judicially in determining what persons and things are subject to taxation under an act of congress levying taxes.

[Quoted in Kissinger v. Bean, Case No. 7,853.]

2. If the subject matter is within his jurisdiction, that is, if he is bound to enquire and determine who and what are subject to taxation, a mistake as to the person or thing taxed, or an irregularity of proceeding on his part, will not invalidate his action as assessor so far as to make the collector, who proceeds on a warrant in proper form to collect the tax, a trespasser.

[Quoted in Kissinger v. Bean. Case No. 7,853. Explained in Kensett v. Stivers, 10 Fed. 524.]

3. A sum of money assessed by a United States assessor, under the provisions of an act of congress, in the exercise of his judicial power to determine what is the subject matter of taxation, is a United States tax, within the meaning of the act of congress prohibiting any court from maintaining a suit restraining the collection of U. S. tax. In such a suit the court will not hear the question of the unconstitutionality of the law, or invalidity of the act of congress, under which the tax has been assessed, argued, however much they may be of the opinion that the law, when tested in another form of action, will be found unconstitutional, invalid, or inoperative.

[Applied in Alkan v. Bean, Case No. 202. Quoted in Kissinger v. Bean, Id. 7,853. Explained in Kensett v. Stivers, 10 Fed. 524. Cited in Snyder v. Marks, 109 U. S. 193, 3 Sup. Ct. 160.]

4. The purpose of the act of congress was to prevent any interference with the prompt and regular collection of the revenue; and the interposition of any defence to a national tax, levied by an assessor acting within his jurisdiction, would be equally fatal to the said purpose of congress, whether said defence is founded on the alleged unconstitutionality of the act, its invalidity, or want of application to the case.

5. Query? Has not this court on general principles of public policy, founded on the relations of the states to the general government, the power to dissolve the injunction, independent of the act of congress requiring it?

[This is a bill in equity by the Delaware Railroad Company against John S. Prettyman, collector of internal revenue, and William C. Davidson.]

Geo. C. Gordan, for complainant.

Anthony Higgins, U. S. Atty., for defendants.

BRADFORD, District Judge. The bill filed is an injunction bill to restrain a United States collector and his deputies and agents from collecting a tax assessed as such by a United States assessor, under and by virtue of divers acts of congress. Under the provisions of an act of congress approved July 13, 1866 (14 Stat. 173), this suit is certified to the circuit court of the United States for the Delaware district, and is thus removed from the state tribunal in which it was commenced to this court, where it awaits an adjudication. The cause has been heard on bill, answer, exhibits, and certain facts admitted on both sides. The tax sought to be collected by the government, and resisted by the complainants, is one of 5 per cent., on certain interest money falling due and payable on the first day of July, 1870, on bonds theretofore given by the said complainants, and a further tax of five per cent. on certain dividends of profits made by the said complainants, and falling due on the day and year last aforesaid. The payment of this tax is resisted on the ground (using the language of the bill) "that there is no authority in law for the assessment of the said taxes on the interest which was payable by the said company on the first day of July, 1870, or the dividend which was payable by the said company on the first day of July of the same year." It is alleged by the answer that there is such authority to assess the taxes in question, and it is further alleged, and not disputed, that the taxes sought to be collected have been regularly assessed by the United States assessor of internal revenue, and were transmitted to the collector of internal revenue, on his list of taxes for the month of September, 1870, to be by him collected. In addition, it is alleged by the answer in bar of this suit, that by virtue of a certain act of congress, jurisdiction of such injunction suit as the present, is forbidden to be exercised by any court, in these words, viz.: "No suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court." This act was approved March 2, 1867 [14 Stat. 471], more than three years before the filing of this bill.

I conceive it altogether unnecessary to discuss the question of the authority of the assessor under the act of congress to assess the taxes referred to, as the case is disposed of on other grounds, which, in my mind, admit of no doubt.

The United States congress considered that the exigency of public affairs, in connection with the prompt collection of a large revenue, made it unsafe and impolitic to give to every tax-payer the summary remedy of injunction against its sworn officers when in the discharge of their official duties in the collection of the necessary means to support the government, and to make clear and positive that which it is believed on good legal authority rested in the power of the courts to do without the intervention of an act of congress, passed the act forbidding any court to maintain an injunction suit as

above recited. It is a mistake to say that this is a denial of right to the citizen. It is not a refusal to hear his complaint or to give him a full opportunity in the usual course of law to redress his grievances, but it is a refusal to give him and all the tax-payers alike the extraordinary and summary process of injunction, by which all matters are brought to a stand-still, and the public finances locked up until the question of right is determined. Surely it should be no ground of complaint if the citizen's right to this extraordinary and summary remedy has to yield to that view of the public welfare which is taken by the law-making power of the nation.

The case we are now considering is founded on an injunction bill filed in the court of chancery of the state of Delaware. The writ of injunction is not a mere incident of the bill, that is. merely ancillary to some main equitable purpose which the bill seeks to enforce, but it is its whole object and purpose, and when the injunction falls, there is nothing left for the bill to operate upon; and this not affected by the general prayer for relief. It is therefore pre-eminently a suit brought for the purpose of restraining the collection of tax, and for no other purpose, and such a suit the act of congress says shall not be "maintained" in "any court." In the face of this act, which is unequivocal and conclusive in its terms, I do not see how this suit can be maintained. Suppose it to be true, that there was no authority of law to assess the taxes in question, as claimed by the complainants, and that upon judicial investigation it might be so determined, is an injunction bill the proper legal channel by which the complainants can reach this result? · Will a conviction in the mind of the court of the illegality or want of legality of the tax justify the court in maintaining this suit? This is the real question to be answered in this case. An illegal or unauthorized tax may in one sense be called no tax, and an assessment of such a tax may be in some cases void of any legal effect. and so not come within the operation of the United States statute. Such is contended by the complainants to be the character of the tax in question.

It is complained that the whole proceeding of assessing such tax is not only without authority, but an absolute nullity, which would make the collector a trespasser if he seized property under a warrant, and takes the case from the operation of the Act of congress. I consider that this question has already been settled both on principle and authority.

The plain purpose of the law was to prevent any person disputing the validity of a tax by injunction process, assessed by a United States assessor under the authority of an act of congress. Any defense to the payment of such a tax by this means, whether founded on irregularity, unconstitu-

tionality, or want of authority to impose such tax, is equally fatal to the purposes and intention of the law. The fair presumption is, that officers of the law, such as assessors and collectors of United States revenue, acting under the obligation of bond and oath, or affirmation, and receiving instructions from the commissioner of internal revenue, present, at least, a prima facie case of authorized taxation. It is within the range of possibility, however, that the tax may be such a clear and manifest violation of the law—something which is so clearly prohibited to be taxed, or distinctly excluded from the subject matter of taxation, as that the assessor cannot be said to have any discretion or judgment in regard to assessing such a tax, and cannot be said to have jurisdiction of the matter. In such a case it has been agreed that the proceeding is a mere nullity, and will not afford thereafter a basis for any legitimate action to be taken thereon; and doubtless the act of congress would not apply. There is a wide difference between the case last supposed, however, and the one before the court. I think there is a rule which governs the case and is recognized by the courts as controlling the question of the applicability of the said act of congress. It is this: Whenever an assessor, in the exercise of his office, assesses a tax, which in his discretion and judgment he is authorized by an act of congress to assess, he being bound from the nature of his office to inquire and determine whether the thing in question is or is not the subject matter of taxation, he is then exercising a legitimate jurisdiction over the subject matter of taxation, and a tax thus assessed, although it may afterwards, in other proceedings, be declared unauthorized, comes within the description and meaning of that tax, the payment of which congress has forbidden to be resisted by bills of injunction.

Let us now examine the position of the United States assessor and his duties in reference to this matter. By the law of 1864 [13 Stat. 14], as subsequently amended by the acts of July 13, 1866. March 2, 1867, and July 14, 1870 [16 Stat. 256]. the taxes in question were imposed. On the 2d of March, 1867, congress enacted that these taxes "shall be levied on the first day of March, and be due and payable on or before the 30th day of April, in each year, until, and including the year 1870, and no longer." Under this state of legislation it was considered doubtful whether the tax on this interest and these dividends did not embrace a period of time after the first of January, 1870. Justice Strong, of the supreme court, and a member of the circuit court for this district, decided in Philadelphia & R. R. Co. v. Barnes [Case No. 11,087]. that this tax could not be collected on dividends and interest falling due after the first of January, 1870, by process issued before the 14th of July, 1870 (the date of a subsequent act of congress, extending

the time for the liability of this interest and these dividends to taxation to the first day of August, 1870). It is understood that the supreme court (to which this case has been taken on appeal) have not confirmed this opinion, being equally divided on the legal questions involved. Congress, however, on the 14th of July, 1870, enacted a declaratory law evidently to settle doubts (which are proven by this suit referred to, and this division of the supreme court, to have been in existence before the passage of the said act) as to the true time for which such liability to taxation aforesaid should continue. The provision is in these words: "That sections 120, 121, 122, 123 of the act of June 30, 1864 [13 Stat. 223], entitled, 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' as amended by the act of July 13, 1866, and the act of March 2, 1867, shall be construed to impose the taxes therein mentioned to the first day of August, 1870, but after that date no further tax shall be levied or assessed under said sections." Now after the passage of this last recited act, and in view of all the existing laws on the subject, this tax, now the subject of inquiry, was assessed in regular form by the officer appointed by law to do so. It must be evident that some one was invested with authority to determine—nay, required to do so—whether or not this interest and these dividends, due and payable on the first day of July, 1870, and declared by act of congress of the 14th day of the same month to be the subject matter of taxation, were or were not liable to taxation. The law places that power and duty in the assessor and assistant assessors subject to the control and direction of the commissioner of internal revenue. Where the law gives the power to hear, inquire, and determine concerning a matter, it gives jurisdiction over that matter. When the assessor, therefore, assessed this tax, he put into operation the power to determine whether these dividends and sums of interest were probably the subject matter of taxation; in other words, he exercised his jurisdiction over a matter which was manifestly within it. This case is thus brought clearly within the rule or principle above stated.

On an examination of authorities, the test of validity we shall find to be, that the assessor had jurisdiction of the case as to subject matter and as to person, and as a consequence, we will further find that in such case of jurisdiction, no irregularity or mistake of judgment will make his proceedings void or a nullity. Wise v. Withers, 3 Cranch [7 U. S.] 331, cited by the complainants, is a judgment of the supreme court of the United States, delivered by Chief Justice Marshall, declaring that the imposition of a fine by a court-martial upon a justice of the peace for not performing militia duty, being in violation of the act of congress releasing him

from the performance of such duty, was an unauthorized act, by reason of the court having no jurisdiction of the case, and that the court-martial as well as the collector of the fine by distress warrant were trespassers. It will be observed that the chief justice puts this decision on the ground that there was no jurisdiction. The act of congress had taken this person, i. e., this justice of the peace, from the class liable to military duty—the court has no jurisdiction of the person in this case. They were shut out from the exercise of any judgment and discretion in the matter by the plain words of the act of congress, which excluded the person from their jurisdiction. The principle of this case does not appear to war with our position; but, in our judgment, agrees with and sustains it. The case of Mills v. Martin, cited for the complainants from 19 Johns. 7, follows up the decision in Wyse v. Withers, and makes the officer who executes a warrant to collect a fine for non-attendance on militia duty a trespasser, when the court had no jurisdiction of the case. The same remarks are applicable to this case as to Wyse v. Withers, last cited. Weaver v. Devendorf, 3 Denio, 117, cited by the complainants, decides that an assessor is not responsible in a civil suit for a judicial determination in a matter over which he had jurisdiction, however erroneous it may be, or however malicious the motive which produced it. Judge Beardsley says, "The rule extends to judges from the highest to the lowest, to jurors, and to all public officers, whatever name they bear, in the exercise of judicial power." It, of course, applies only when the judge or officer has jurisdiction of the particular case, and is authorized to determine it. If he transcends the limits of his authority, he necessarily ceases, in the particular case, to act as a judge, and is responsible for all consequences. Now if it be admitted that the United States assessor had jurisdiction to inquire and determine on the propriety of making these assessments or ignoring the act of congress, there could not be produced a case more in point to show that the assessments and proceedings thereon are not nullities and cannot be resisted by injunction process.

The next case cited by the complainant is Le Roy v. East Saginaw City Ry. Co., 18 Mich. 233. By the statute law of Michigan "no replevin shall lie for any property taken by virtue of any warrant for the collection of any tax, assessment or fine in pursuance of any law of this state." This was an action of replevin brought by the plaintiffs for the recovery of goods and chattels taken by the collector of taxes, and the court gave their construction of the statute in these words, viz.: "This provision must therefore be construed as applying only to cases in which a valid tax might by legal possibility have been imposed and collected by regular and proper proceedings under some statute authority. In this latter class of cases this pro-

vision would prohibit the action of replevin, though the statute authority might not have been fully complied with, and the proceedings might have been so far irregular as to defeat a sale of real estate, sold for such taxes." In this case, the right to maintain the action of replevin in all cases where there was no statute authority to assess a tax was allowed, and consequently the inquiry as to such illegality was opened and determined in the action of replevin. This case is in point for the complainants. It is the only authority I have seen on this side of the question. The judge giving his opinion cites no case supporting his decision. On the other hand, in People v. Albany Common Pleas, 7 Wend. 485, Savage, C. J., says: "Replevin will not lie for property taken by virtue of a warrant for the collection of any tax, assessment or fine in pursuance of any statute of the state. Although the warrant may have issued erroneously or irregularly, if on its face it gives authority to the officer to collect the fine, &c., &c., replevin cannot be sustained." In the case before the court we are bound to presume that the warrant, if issued, would have been in due form—would have presented to the complainants an authority to levy upon their property for the taxes assessed. In such case the authority last cited is clearly with the defendant, and in opposition to the case cited from the Minnesota Reports.

The case of Beach v. Furman, 9 Johns. 229, is similar to the one before the court in the principles which govern its decision. The questions there arose upon an action of trespass in a justice's court for taking and carrying away a cow belonging to the plaintiff for non-performance of work upon the public roads. The defendants justified as officers executing a warrant, given by a justice of the peace, who, under the New York statute, was required to issue it on a written complaint made by the overseer of highways. The case was taken by certiorari to the supreme court of the state. The court says: "Whether Sarah Furman, being a woman and a freeholder, was liable to be assessed to work on the highways, is a question which does not necessarily arise in this cause. Admitting her not to have been liable to be assessed, yet, as she was assessed, and on complaint in writing made to the justice by the overseer of highways of her default, the justice was not to inquire into the legality of the assessment, but was bound by the act forthwith to issue his warrant of distress, and the constable was equally bound to execute it. Both the justice and constable acted ministerially in the case, and a mere ministerial officer is not responsible for the issuing or execution of process so long as the authority under which the process is awarded had jurisdiction over the subject matter. Now, the overseer of the highways was the person to designate in the first instance, and to deliver to the commissioners the names of the persons liable to be assessed, and he was also the

officer to adjudge what persons were in default, and to demand the warrant. In the exercise of this authority the overseer may have returned the names of persons not liable to assessment, and he may have adjudged persons in default who were not in default. The remedy for the party aggrieved cannot be against the justice and constable, for they had no alternative but to obey, as the law did not give to either of them the right to inquire into the legality of the assessment or the truth and sufficiency of the default."

This case is authority upon the question of jurisdiction of the assessor of internal revenue. It is his duty to inquire who and what are subject to taxation—that is, it is within his jurisdiction to determine this. A mistake as to the person or the thing to be taxed, though remediable by various other means, cannot be reached by proceedings against the ministerial officers, such as the collectors who execute the warrant.

In 7 Barb. pp. 129, 133, the two cases of Van Rensselaer v. Cottrell and Van Rensselaer v. Witbeck may be cited as authority that the action of an assessor of taxes, when within his jurisdiction, cannot be questioned collaterally, that the collector acting under it is protected from being held liable in damages for so doing. The last case establishes the proposition that it is within the jurisdiction of the assessors to determine who are to be taxed and what property is taxable, and in making this determination that they act judicially. O'Reily v. Good, 42 Barb. 520, was decided in New York in 1864, some years before the passage of the act of congress prohibiting injunctions. In that case a tax created by act of congress, and assessed by regular assessment, and demanded in a warrant regular in form, had been levied on certain personal property, and replevied by the owner. By the statute of the state, replevin would not lie to take back property levied on for state taxes. There was no United States statute preventing the use of the writ of replevin in such cases. But Sutherland, J., said: "It is possible, and perhaps probable, that this Code restriction upon the right to obtain the immediate delivery of the property was intended to apply to property taken for a tax under either a state or a United States statute; but, whether this be so or not, the constitutional relation of the state to the United States, and the most self-evident considerations of public policy, at once suggest that it will not do to say that property seized for a tax under an act of congress, and on a warrant regular on its face, can be replevied. Concede the right to replevy in such a case, and innumerable replevin suits might delay, if not totally defeat, the collection of the national revenue. No doubt a party whose property has been seized for a tax under an act of congress, and on a warrant regular upon its face, if he deems the act unconstitutional, or the assessment proceeding irregular, can have the question of constitu-

tionality or irregularity determined in an action or proceeding to recover damages merely." Now, this case goes much beyond the requirements of the one before the court, and is especially interesting as authority which would justify the dissolution of this injunction, and dismissal of the bill, without the existence of the act of congress now demanding it. The supreme court of the state of New York entertains such a proper conception of the relations between the state and the United States governments, or what was due from the authorities of the state, in aid of the necessities of the government of the United States, that they denied to their own citizens the right to disturb a United States collector in the possession of personal property which he had taken on a warrant regular on its face, for taxes levied under the authority of an act of congress, although the statute prohibiting replevin for taxes made no reference to United States taxes. If then the collector could not be disturbed in his possession of the property levied on, by the action of replevin, on grounds of grave public policy alone, there being no act of congress touching the case; the same state of things existing now, as to act of congress imposing the tax, assessment, and regularity of warrant, would require a refusal of the order of injunction; a refusal of the writ of replevin is based on the right of the collector to hold on to that which he has seized, and admits the rightful taking, and is utterly inconsistent with a prohibition or injunction against doing that which is admitted to be right, viz.: collecting a tax regularly assessed under an act of congress by a warrant regular in form. So that this case is an authority for dissolving the injunction were there no act of congress in existence. Savacool v. Boughton, 5 Wend. 171, will be found a leading case reviewing at length the law establishing the proposition "that a ministerial officer is protected in the exercise of process, whether the same issue from a court of general or special jurisdiction, although such court have not in fact jurisdiction in the case, provided that on the face of the process it appears that the court has jurisdiction of the subject matter, and nothing appears in the same to apprise the officer but that the court also has jurisdiction of the person of the party to be affected by the process." This case goes to a great extent in protecting the ministerial officer from liability for trespass, and I take it that whenever he would be so protected the proceedings on which his warrant is based are not void—are not nullities. In Dynes v. Hoover, 20 How. [61 U. S.] 65, the court reviews the law in reference to the liability in trespass of an officer who executes a writ or warrant. and concludes that when the court has jurisdiction over the subject matter, an action of trespass for false imprisonment will not lie. against the ministerial officer who executes the sentence. See, also, on this point [U. S. v. Arredondo] 6

Pet. [31 U. S.] 730; [Voorhees v. Bank of U. S.] 10 Pet. [35 U. S.] 478; and 2 How. [43 U. S.] 338.

In the case of Robbins v. Freeland [Case No. 11,883], certain suits were instituted in the state courts against the collector, and orders were made by the state judge to show cause why the injunction which had been moved for should not be made permanent; they were removed by certiorari (as in this case) to the circuit court of the United States. The objections made to the tax were that it was unconstitutional on various grounds, and Judge Benedict said "that the court was clearly forbidden by this section (that is, by the act of congress prohibiting the maintenance of any suit restraining the collector of tax) from entertaining this motion, and the motion for injunction was denied."

It will be observed that those objections were to the constitutionality of the law. The objection here is that there was no law whatever. The result is the same; if the law was without constitutional authority it was utterly void; it was a nullity, quite as much so as if there was no law or statute in existence authorizing the tax; yet the court would not allow that inquiry to be made, and argued in an injunction suit. In this case congress did intend to and supposed it had extended the time for the existence of those taxes to the first of August, 1870, and used language which manifested clearly (whatever else it failed to do) such intention. Such intention was acted on by the commissioners of internal revenue and by the assessors, as a valid law of congress, and had not been disputed in any court. Now, why should the validity of that act of congress be drawn into question in this injunction bill any more than the unconstitutionality of an act of congress. I cannot see any reason why it should be so.

The next and last case I shall notice is Pullen v. Kinsinger [Case No. 11,463]. It is a decision by the United States circuit court, Judge Emmons, of the sixth circuit, and embraces a great amount of law bearing on the point now before the court. The case arose on taxes by the assessor of the United States on certain distilleries. Restraining orders had been obtained from the state courts, and the cases were certified (as in this case) to the United States circuit court. The legal questions arose on demurrers filed by the United States, and the judge said: "The demurrers therefore will be sustained upon the ground solely that neither this court or the state tribunal from which these cases were removed have any right to restrain the collection of federal tax assessed by an officer having jurisdiction of the subject, be it ever so irregular or erroneous;" and again he says: "Announcing as a rule for the facts in these cases only, it is sufficient that a statute has authorized the assessor to entertain the general subject of taxation; that it was in fact entertained, and judgment, law-

ful or unlawful, was rendered concerning it So far as this judgment is concerned, whether lawful or unlawful, is deemed quite immaterial." I have thus no difficulty in concluding that the United States assessor was acting strictly within his jurisdiction in assessing the taxes in question; that with the command of an act of congress of July 14, 1870, unrepealed and undisturbed, by any judicial decision, the revenue officers would have been criminal in not yielding obedience to it, and conforming their conduct to its requirements. That, however, it may be determined hereafter in other proceedings as to the validity and legislative efficacy of this act of July 14, 1870, that matter cannot be inquired of and determined in the form of suit now before the court, and that the proceedings of the assessor, being both based on legislative command, and on a discretion exercised by him in reference to a matter strictly within his jurisdiction, cannot in any sense be considered void or a nullity; and that the sums levied under these circumstances are United States taxes—within the meaning of the act of congress—prohibiting courts maintaining suits restraining their assessment or collection. Let a decree therefore be entered dissolving the injunction and dismissing the bill, with costs for the defendants.