## KENSETT *v.* STIVERS and others.

*(Circuit Court, S. D. New York.* November 8, 1880.)

1. INTERNAL REVENUE—ERRONEOUS OR ILLEGAL TAXATION—INJUNCTION.

Where a tax is assessed, upon manufactured articles liable to duty, by a person in office and clothed with authority over the subject-matter, its collection cannot be restrained by injunction in any court of equity of the United States, however erroneously or illegally it has been assessed.

2 JURISDICTION AND POWER OF ASSESSORS.

The power of assessing taxes on tobacco against tobacco manufacturers necessarily covers the question of quantity, rate of tax, amount of tax, and persons liable to tax, and mistakes in any of these respects are only errors, and not such absence of jurisdiction as to make the proceedings wholly null and void.

3. STATUTORY PROHIBITION.

Section 10 of the act of congress of March 2, 1867, (14 St. at Large, 475,) amendatory of section 19 of the act of congress of July 13, 1866, (14 St. at Large, 152,) contains a provision additional to the provisions of the latter statute, as follows : "And no suit for the purpose of restraining the assessment or collection of a tax shall be maintained in any court." Id.

4. RIGHTS PRESERVED UNDER STATUTE.

Section 34 of the act of congress of March 2, 1867, provides as follows : "This act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts." *Held,* that under this section all rights are saved ; but that the right to a remedy is merely a remedy which congress could take away without affecting any "right accrued."

In Equity.

*Enoch L. Fancher,* for plaintiff.

*Edward B. Hill,* Asst. Dist. Atty., for defendants.

BLATCHFORD, C. J.   The defendant Stivers is the collector of the internal revenue of the United States for the eleventh collection district in the state of New York, residing at Middletown, Orange county, New York; the defendant Corwin is his deputy collector, residing at Newburgh, in said county; and the defendant Blake is the collector of the internal revenue of the United States for the third collection district in the state of New York, residing in the city of New York. · All of the defendants and the plaintiff are citizens of the state of New York. The plaintiff resides in the town of Cornwall, Orange county, New York, and is the widow of Thomas Kensett, late of Baltimore, Maryland, deceased.   Before her intermarriage with Kensett she was the wife of Marquis D. L. Sharkey, from whom she obtained a decree of divorce *a vinculo matrimonii* on the first of June, 1870, in the supreme court of the state of New York, which decree is in force.   She was born in December, 1843, and was married to Sharkey in April, 1864. Sharkey at some time commenced some business arrangements with the firms hereinafter mentioned, or one of them, engaged in the tobacco trade in the city of New York.   She never knew the particulars of such arrangements except that one day Sharkey told her that he had invested in her name, in the tobacco business, $15,000, because as there were judgments against him he could not, with safety, use his own name, and he compelled her by threats to sign a paper, January 1, 1866, which he said was a special partnership paper of the firm of Alexander Ross & Co.   If Sharkey ever made such investment it was of his own money, and not from any money belonging to her.   She had no separate estate, and she did not sign said paper freely, nor willingly assent to such use of her name, nor has she ever had anything to do

with said tobacco firms, or either of them, nor has she ever received or claimed any interest therein, or any benefit therefrom. The said firm of Alexander Ross & Co. was never advertised according to law, so as to become a special partnership, and she was not held out as a partner therein, and the same never became, as to her, a general partnership. About 14 years have elapsed since she heard anything concerning the said affairs, but in 1880, while she resided in Cornwall, a notice as follows was left at her mother's residence by the defendant Corwin:

"List November, 1866. Div. Fourth Dist. N. Y. Notice of taxes assessed. United States Internal Revenue. Office of the Collector of Internal Revenue, Eleventh District, State of New York, July 2, 1880.

"*Mrs. Gertrude W. Sharkey, now Mrs. Thomas Kensett, Cornwall on the Hudson:*

"The tax assessed against you and others, for deficiencies in tobacco manufactured, sold, or removed, without payment of tax, from November 1, 1865, to October 31, 1866, amounting to $233,660.17, is due and payable on or before the twelfth day of July, 1880, and unless paid within that time it will become my duty to collect the same, with a penalty of 5 per centum additional, and interest at 1 per centum per month.      JOHN CORWIN, Deputy Collector.

"Office, No. 130 Water street, Newburgh."

She consulted counsel, who was informed by Corwin that he had received an order from the defendant Stivers to collect the tax out of the property of the plaintiff. Stivers informed her counsel, on September 7, 1880, that the assessment was certified to him by the defendant Blake, and was as follows:

S. N. Daily, John Vant, J. J. Yates, Mrs. G. W. Sharkey, Alex. Ross, and David O'Neil, doing business under the firm names and styles of Alex. Ross & Co., Ross, Storms & Co., and David O'Neil, at 206 and 208 Fulton street.

Deficiencies of tobacco manufactured, sold, or removed, without payment of tax, from November 1, 1865, to October 31, 1866, viz.:

| | |
|---|---:|
| Chewing tobacco, 263,482 lbs., 40c. | $105,392 80 |
| Smoking tobacco, 102,535 lbs., 35 and 15c. | 26,652 45 |
| Stems tobacco, 105,286 lbs., 15c. | 15,792 90 |
| Shorts, August, September, and October, 26,451 lbs., 30c. | 7,935 30 |
| | $155,773 45 |
| Additional tax, 50 per cent. | 77,886 72 |
| | $233,660 17 |

The persons and firms against whom said assessment is made were not joint dealers in the tobacco business, or any other business, in

1865 and 1866, but said firms and O'Neil had several distinct and separate business interests, and were not jointly concerned in the manufacture or sale of tobacco. The plaintiff was never a partner, or jointly interested with any of said persons or firms, and never had any interest in any tobacco or tobacco business at 208 Fulton street, New York, or elsewhere. Until July, 1880, the plaintiff had no information of said tax, and no knowledge that her name was connected with it. There is no record concerning said tax in the office of the defendant Blake, and the pretended record thereof was got up and sent to Washington by a collector or assessor, with certain books and papers seized at 208 Fulton street, New York, now with the commissioner of internal revenue. Stivers, though requested, has refused to revoke said order of collection, and any personal property which the plaintiff has, which Corwin can find, will be liable to seizure unless the tax be paid. The stock of tobacco at 208 Fulton street, owned by one or more of said firms, and worth $60,000, was, soon after the assessment of said tax, seized by the collector of internal revenue in New York, and sold, on account of the non-payment of said tax, and a large sum was realized by the United States therefrom. At the time there was about $20,000 worth of tobacco stored in said store, owned by the plaintiff's father, which was included in said seizure and sale, though none of the persons against whom said tax was assessed had any interest therein. Another large sum has been realized by the collector of another internal revenue district on said tax, but no credit is made for said sums on the claims so presented against her. A farm in which Sharkey had an interest was, before her divorce, sold by the collector of internal revenue for the twenty-third district of New York, on account of said tax. Sharkey's conduct towards her was coercive and cruel, and she had no opportunity or power to resist his improper practices in respect of said partnership paper or tobacco business, and if at any time her name appeared in any of said matters, it was without her free will or voluntary consent. What means she has from the estate of Mr. Kensett are paid over to her by trustees under his will, and are necessary for her support, and that of a daughter, four years old. She has applied to the commissioner of internal revenue for a remission of said tax, on her affidavit of the foregoing facts. He declined, on the thirtieth of September, 1880, to stay the proceedings of the defendant Stivers. Her grievance cannot be remedied by any action at law, as she cannot pay the large amount of the tax and sue to recover it back, nor

can she, without leading to a multiplicity of suits, allow her property, whenever seized for said tax, to be sold, and bring suits at law to recover its value, for she has property in different collection districts, and the defendants have caused transcripts of said tax to be transferred to different collection districts, with a view to its collection from her property in said districts, and the same has thereby become a cloud upon her interests in real estate in the state of New York and in the state of Maryland.

The plaintiff has filed a bill in equity in this court against the above-named defendants, setting out the foregoing allegations, and praying for a decree adjudging that the said tax or assessment is illegal and void as against her, and that the defendants have no lawful right to enforce or attempt to collect the same as against her property; and that they, and each of them, be perpetually enjoined, as collectors of United States internal revenue, from taking any steps or proceedings to enforce or collect the said tax from any of her property, and from causing or permitting a transcript of said tax to be sent to any other collector of internal revenue for that purpose.

The defendants demur to the bill, for that it does not make out a case for equitable relief, and that this court is forbidden, by section 3223 of the Revised Statutes of the United States, to grant the relief prayed in the bill, or any relief in the premises, and therefore cannot entertain the bill, or grant any relief thereon to the plaintiff.

The bill in this case is a bill to restrain the collection of a tax which purports to have been assessed under the internal revenue laws. It has no other object or purpose. A decree, as prayed for, adjudging the tax to be void as against the plaintiff, and that the defendants have no lawful right to attempt to collect it as against her property, is merely preliminary to the relief by perpetual injunction, which is prayed, and would be futile, for any purpose of this suit, unless followed up by a perpetual injunction.

The internal revenue act of July 13, 1866, (14 St. at Large, 152,) provided (section 19) as follows:

"No suit shall be maintained in any court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the commissioner of internal revenue according to the provision of law in that regard, and the regulations of the secretary of the treasury established in pursuance thereof, and a decision of said commissioners shall be had thereon, unless such suit shall be brought within six

months from the time of said decision, or within six months from the time the act takes effect: provided, that if said decision shall be delayed more than six months from the date of such appeal, then said suit may be brought at any time within 12 months from the date of such appeal."

By section 10 of the act of March 2, 1867, (14 St. at Large, 475,) it was enacted that section 19 of the said act of 1866 be amended "by adding the following thereto:" "And no suit for the purpose of restraining the assessment or collection of a tax shall be maintained in any court." The word "any" appears to have been inserted by the revisers. The enactment in section 3224 ought not to be construed as having any other meaning than it had when, after the act of 1867, it formed a part of section 19 of the act of 1866 by being added thereto. The first part of section 19 related to a suit to recover back money paid for a "tax alleged to have been erroneously or illegally assessed or collected," and the section, after thus providing for the circumstances under which such a suit might be brought, proceeded to say that "no suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court." By all the rules for construing statutes the addition of 1867 may properly be construed as *in pari materia* with the previous part of the section, and as relating to the same subject-matter. As the "tax" spoken of in the first part of the section is a "tax alleged to have been erroneously or illegally assessed or collected," and as, though an allegation of illegality or error is made, the thing is still called, *sub modo,* a "tax," in the first part of the section, it would seem proper to hold that when the section speaks of tax in the addition it means a thing which is in a condition to be collected as a tax, and is claimed by the public authorities to be a tax, although on the other side it is alleged to have been illegally or erroneously assessed. This would dispose of the view that section 3224, in speaking of a "tax," means only a legal tax, and that an illegal tax is not a tax, and so does not fall within the inhibition of the statute, and the collection of it may be restrained.

But the question as to the proper construction of the statute has come up in several cases.

In *Howland* v. *Soule,* Deady, 413, in 1868, in the circuit court of the United States for the district of California, a bill was filed to restrain a United States collector of internal revenue from collecting by distraint a tax assessed against a manufacturer, on the ground that the tax was illegal, and therefore no tax. The inhibition of the

statute was set up, and the court dismissed the bill. Judge Deady said:

"This is a tax within the meaning of the statute. It has the form and color of a tax. It was assessed upon manufactured articles liable to a duty, by a person in office and clothed with authority over the subject-matter. The tax has come to the defendant for collection in due course of office and from the proper authority."

In *Pullan* v. *Kinsinger*, 2 Abb. (U. S.) 94, in 1870, in the circuit court of the United States for the southern district of Ohio, before Judge Emmons, a bill in equity was filed by certain distillers to obtain an injunction restraining the defendants from collecting a tax which, as internal revenue officers of the United States, they claimed to collect from the plaintiffs as distillers. The bill was demurred to and was dismissed. It claimed that the government surveyors had fixed an erroneous capacity for the distillery under the act of July 30, 1868, and had thus given the assessors a fictitious basis for taxation, and that all taxes on the actual capacity had been paid. It was insisted that the assessor had thus exceeded his jurisdiction; that the assessment was void; and that, therefore, the inhibition of the statute against an injunction did not apply. On the part of the defendant it was claimed that the surveyors and the assessor had jurisdiction of the subject; that their proceedings were not nullities, though they might be irregular and illegal; and that the statute applied. The court sustained the demurrer solely on the ground that it had no right to restrain the collection of a federal tax assessed by an officer having jurisdiction of the subject, be it never so irregular or erroneous. It says:

"It is sufficient that a statute has authorized the assessor to entertain the general subject of taxation; that it was in fact entertained, and a judgment, lawful or unlawful, was rendered concerning it. So far as this judgment was concerned, lawful or unlawful, is deemed quite immaterial."

The view taken by the court was that the general subject of taxing distillers, and the judicial duty of determining, either upon view or inquiry or evidence, what persons and what things were within the law, was imposed upon the assessor. Various cases were cited to sustain the decision. One was a case where the assessment of a woman not liable to highway duty was held not to be a void proceeding. Another was a case where a person not a member of a military troop was fined by a court martial, and, his property being seized under a warrant, he brought replevin for it, and it was held he could not main-

tain the suit. These classes of decisions recognize the principle that, if the proceeding is a nullity, the statute against an injunction has no application. But the proceeding is held not to be a nullity where there is general jurisdiction in the class of cases involved, and where the tribunal has judicially determined that the case is within it.

In the present case it is not pretended that there was not general jurisdiction of this subject of assessing taxes on tobacco against tobacco manufacturers. This power necessarily covered the questions of quantity, rate of tax, amount of tax, and persons liable to tax as tobacco manufacturers, in respect to the tobacco under adjudication. Mistakes in any of these respects were only errors, and not such absence of jurisdiction as to make the proceedings wholly null and void. The bill admits that Sharkey had business arrangements with the firms, or one them; that they were engaged in the tobacco trade in the city of New York; that the plaintiff was told that money was invested in her name in such business; that she signed a paper January 1, 1866, which appeared to be a partnership paper of the firm of Alexander Ross & Co.; that a tax was assessed against her and others as doing business under the firm name of Alexander Ross & Co., and other names, for tobacco manufactured, sold, or removed, without payment of tax, from November 1, 1865, to October 31, 1866; and that there is a record of the assessment of such tax in the office of the commissioner of internal revenue. This state of facts is sufficient to bring this case within the decision in *Pullan* v. *Kinsinger*.

In *Robbins* v. *Freeland*, 14 Int. Rev. Rec. 28, in 1871, in the circuit court of the United States for the eastern district of New York, a bill was filed to restrain a collector of internal revenue from collecting an income tax assessed against the plaintiff, on the ground that the act of congress imposing it was unconstitutional and void, and that the plaintiff had no remedy at law sufficient to indemnify him if the collecter was allowed to distrain and sell his property. The defendant relied on the inhibitory statute and the decision in *Pullan* v. *Kinsinger*. Judge Benedict held that the court was forbidden by the statute from entertaining the application.

In *Delaware R. Co.* v. *Prettyman*, 17 Int. Rev. Rec. 99, in the circuit court of the United States for the district of Delaware, a railroad company sought to enjoin the collection of a tax assessed by an assessor of United States internal revenue on interest money payable by it on its bonds, and on dividends of profits made by it. It was

·claimed that the tax was unauthorized by law. The inhibitory statute of 1867 was invoked by the defendant, who was a collector of internal revenue, and the court dismissed the bill. Judge Bradford cited the two cases, before referred to, of *Pullan* v. *Kinsinger* and *Robbins* v. *Freeland*, and held that the suit was forbidden by the act of congress. He said:

"Whenever an assessor, in the exercise of his office, assesses a tax which in his discretion and judgment he is authorized by an act of congress to assess, he being bound from the nature of his office to inquire and determine whether the thing in question is or is not the subject-matter of taxation, he is then exercising a legitimate jurisdiction over the subject-matter of taxation, and a tax thus assessed, although it may afterwards in other proceedings be declared unauthorized, comes within the description and meaning of that tax, the payment of which congress has forbidden to be resisted by bills of injunction."

He held that the power and duty of determining whether the interest and dividends in question were liable to taxation were confided by statute to the assessor; that, when the assessor assessed the tax in question, he put into operation the power of determining whether such interest and dividends were properly the subject-matter of taxation; and that he thus exercised his jurisdiction over a matter which was manifestly within it. In the present case it is contended that, although the assessor may have had jurisdiction over the subject-matter, he had no jurisdiction over the person of the plaintiff, for the reasons stated in the bill. But, under the law, it was the duty of the assessor to inquire and determine *who* was subject to taxation, quite as much as to determine any other question. A mistake as to the person, made in the exercise of such jurisdiction, does not oust the jurisdiction any more than any other error does.

In *U. S.* v. *Black*, 11 Blatchf. 543, in 1874, in this court, Judge Shipman, referring to the inhibitory statute, says that under it "payment must be made, at all events, whether the tax was justly or unjustly levied."

In *Kissinger* v. *Bean*, 7 Biss. 60, in 1875, in the circuit court of the United States for the eastern district of Wisconsin, the commissioner of internal revenue had assessed against the plaintiff a tax on distilled spirits, and the plaintiff filed a bill against the collector to restrain its collection. The court refused an injunction, on the ground that the inhibitory statute applied. The plaintiff claimed that he was not individually liable to the tax, because the business had been carried on by a corporation in which he was a stockholder. Judge Dyer held that it must be clear that the proceeding was an

absolute nullity, in order to sanction the interference of the court, and that if the plaintiff was within a class of persons against whom assessments might be made, the court could not interfere, although the proceedings were even so irregular or erroneous.

In *U. S.* v. *Pacific R. R.* 4 Dill. 69, in 1877, in the circuit court of the United States for the eastern district of Missouri, Mr. Justice Miller says:

"We have, even without the aid of an act of congress, refused to grant an injunction to stay the collection of taxes under any circumstances, and this upon the broad ground applicable to this case, that the taxes of the government are essential to the support and existence of the government; and we have always refused to permit any interference with their collection by injunction. The principle involved is this: that by setting up other debts and cross-actions and counter-claims against the government it would in effect be placing the existence of the government at the mercy of any person who chose to set up his right in this way, and thus hinder the collection of taxes. Since that decision was originally made the statutes passed by congress go very strongly in that direction. Congress has passed a statute expressly forbidding the granting of an injunction for that purpose. It has passed a statute for the correction of errors of the assessing and collecting officers of the government, which the supreme court has said, in two or three cases, is a complete and perfect system. If the tax is unjustly assessed, or supposed to be unjustly assessed, the remedy allowed is an appeal to the commissioner of internal revenue. If he decides against the party, or fails to decide within six months, the party injured can pay his taxes and go into court and sue for this amount, and recover it back if he is wrongfully assessed, the court being unprejudiced by any action of the commissioner. The statute says he may bring his suit to recover it back, and he will get it back if the court so decides. The time for bringing such a suit is limited, so as to have no delay in settling the matter. It must be within 12 months—6 months after the commissioner has decided, and 12 months after the appeal has been taken. And we have said over and over again, in our courts, that that was a complete and exclusive system of correctional justice in regard to the collection of taxes unjustly assessed; that it was the only system; and by that ruling we abide. There can be no such thing as obstructing and objecting to the payment as in the case of adjusting the accounts of individuals."

In *Alkan* v. *Bean*, 23 Int. Rev. Rec. 351, in 1877, in the circuit court of the United States for the eastern district of Wisconsin, a bill was filed against a collector of United States internal revenue to restrain the collection of a tax which had been assessed against a distiller from whom it was alleged the plaintiff had bought the distillery premises without notice of any claim by the government on the premises for taxes unpaid by the vendor. It was also alleged that the assessment was irregular and void. The inhibitory statute was set

up, and the court refused an injunction. Judge Dyer cited with approval what was said by Judge Deady in *Howland* v. *Soule*, and by Judge Bradford in *Delaware R. Co.* v. *Prettyman*, and by Judge Shipman in *U. S.* v. *Black*, and said that he regarded the observations of the supreme court in *Clinkenbeard* v. *U. S.* 21 Wall. 65, as implying that the suit before him could not be maintained.

Against this current of authority the only case cited, or which I have been able to find, in which an injunction has been maintained to restrain the collection of an internal revenue tax, is that of *Frayser* v. *Russell*, 3 Hughes, 227, in 1878, in the circuit court of the United States for the eastern district of Virginia, before Judge Hughes. The head-note, by Judge Hughes, is this:

"Though it is true that courts of equity of the United States cannot enjoin an officer of the United States from collecting a tax, yet there are circumstances under which such collecting officers may be enjoined from claiming moneys of citizens and levying for them as if for taxes."

It is sufficient to say that the circumstances of the present case do not bring it within the circumstances of that case; that that case does not impugn the principles laid down in the other cases before cited; and that, if it did, the weight of authority is against it.

It is contended for the plaintiff that the inhibitory provision found in the act of March 2, 1867, does not apply to this case, for the reason that the right to bring this suit is saved by section 34 of the same act of 1867. That section provides as follows:

"This act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts, but every such right is hereby saved; and all suits and prosecutions for acts already done in violation of any former act or acts of congress relating to the subject embraced in this act may be commenced or proceeded with in like manner as if the act had not been passed; and all penal clauses and provisions in existing laws, relating to the subjects embraced in this act, shall be deemed applicable thereto."

It is contended for the plaintiff that, as the alleged deficiencies occurred before November 1, 1866, she had, as the law stood on that day, and before the act of 1867, a right of action to restrain the collection of the tax, because there was then no inhibitory statute, and that such right of action is a "right accrued" under an act or acts prior to the act of 1867, and so was saved by section 34 of that act; and that this suit is a suit for an act done in violation of an act or acts prior to the act of 1867, relating to a subject embraced in that act, and so may, under section 34, be commenced in like manner as if that act had not been passed.

It does not distinctly appear by the bill in this case that the tax in question was assessed before the act of 1867 was passed. But, even if it be assumed that it was, the right to bring this suit cannot be held to have been a right saved by section 34 of the act of 1867. The suit was not brought before the act of 1867 took effect. If the remedy existed because the assessment had been made, the remedy had not attached to any vested right. There was no right except the right to the remedy, and the right to the remedy was only the remedy. Congress could take away the remedy without taking away any "right accrued." *Memphis* v. *U. S.* 97 U. S. 293, 297, 298. Construing the inhibitory provision in the act of 1867 as taking away any right, if it existed before, to bring this suit, is not construing it so as to affect any "act done" or "right accrued" under any former act, in the sense of those expressions as used in section 34 of the act of 1867. Nor can this suit be held to be a suit for an act done in violation of an act prior to the act of 1867, relating to a subject embraced in that act, within the meaning of section 34 of the act of 1867.

There is another view. The act of 1867, including section 34, is repealed by section 5596 of the Revised Statutes, because portions of that act are embraced in the Revised Statutes, and in lieu of section 34 the provisions of section 5597 of the Revised Statutes are in force. That section provides as follows: "The repeal of the several acts embraced in said Revision shall not affect any act done, or any right accruing or accrued, or any suit or proceedings had or commenced in any civil cause before the said repeal, but all rights and liabilities under said acts shall continue, and may be enforced in the same manner as if said repeal had not been made." To sustain this demurrer does not affect any act done before the act of 1867 took effect. It does not affect any right accrued before that time. The right to apply for an injunction as a remedy, is not such a right as the statute means. It is a mere remedy. In *Terry* v. *Anderson*, 95 U. S. 628, 633, it is said: "As to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain." In regard to the subject-matter of this suit it has been repeatedly held that the means provided by statute, and left in force, for enforcing any right of the plaintiff, without the existence of the remedy by injunction, are adequate means, in the sense of this rule. To recur to section 5597, this suit was not commenced before the Revised Statutes were enacted. All rights of the plaintiff in any sense in which the word "right" is used in section 5597 continue, although the right to the

remedy by injunction does not continue, and to say that such remedy does not exist, is not to say that any "right" of hers is not to be enforced in the same manner as before the Revised Statutes were enacted.

The demurrer is allowed, with costs.