## SHELTON *v.* PLATT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF TENNESSEE.

No. 1155. Argued March 13, 16, 1891. — Decided April 6, 1891.

While an unconstitutional tax may confer no right, impose no duty and
support no obligation, the trespass resulting from proceedings to col-
lect such void tax cannot be restrained by injunction, where irreparable
injury or other ground for equitable interposition is not shown to exist.

THOMAS C. PLATT filed his bill (subsequently amended)
against J. W. Allen, comptroller of the State of Tennessee,
and A. Shelton, sheriff, and S. D. Cate, deputy sheriff, of
Hamilton County, Tennessee, in the Circuit Court of the
United States for the Eastern District of Tennessee, as presi-
dent of the United States Express Company, a joint stock com-
pany of the State of New York, and as one of the members
thereof, on behalf of himself and his associates, who were too
numerous to be joined as parties, to restrain the collection of a
license tax from the said company for the years 1887, 1888
and 1889, under certain acts of the State of Tennessee of 1887
and 1889, in that behalf, alleged by him to be unconstitutional.
Complainant averred that the comptroller had issued a distress
warrant to the sheriff of Hamilton County, who had placed it
in the hands of his deputy to execute, for the collection of the
license taxes of 1887 and 1888, which warrant the said sheriff
"has levied on or is about to levy on the property of the
United States Express Company," and that the comptroller
threatened to issue another distress warrant to collect the
license tax for the year 1889.

And the bill then proceeded: "Your orator further shows
that the property of the said United States Express Company
in Tennessee is employed in interstate commerce in the said
express business and is necessary to the conduct of it; that if
seized by the said sheriff it will greatly embarrass the company
in the conduct of such business and subject it to heavy loss and

damage, and the public served by it to great loss and inconvenience. Your orator further says that your orator and the United States Express Company are without adequate remedy at law in the premises."

The prayer was for an injunction against the collection of the taxes imposed by the acts of Tennessee referred to, or either of them, and from interfering or attempting to interfere in the operation of the company's business by reason of the non-payment of said taxes or either of them, and for general relief, process and answer.

Defendants filed a plea in abatement, setting up an act of the legislature of Tennessee entitled "An act to facilitate the collection of revenues," approved March 21, 1873, and insisting that, in accordance with its terms, "complainant's only remedy is to pay under protest the taxes complained of, and then sue within thirty days thereafter for a recovery of the amount so paid; and no injunction or other restraining order or writ to prevent the collection of said tax will lie." And also a motion to quash the writ and dismiss the bill, as amended, for the reasons, among others, that the suit was brought in a district other than that of which the defendant Allen was an inhabitant, and other than that in which he was found at the time the writ was served on him; that, under the public laws of the State of Tennessee, (namely, the act above mentioned,) complainant's only remedy is to pay under protest the taxes complained of and then sue to recover the same, and no restraining order will lie against the collecting officer; and that no irreparable injury or other ground of equitable jurisdiction is shown in the bill.

The motion to dismiss was sustained as to the defendant Allen, and judgment entered in his favor, but the motion was overruled as to the other defendants, they excepting; the plea was heard and stricken from the files, and exceptions taken; and defendants were granted leave to rely upon the matter of the plea and the several grounds of the motion in their answer. Defendants Shelton and Cate thereupon answered, restating the grounds of the plea and motion.

Replication was filed and the cause came on to be heard

upon bill, answer and replication, and a decree was rendered perpetually enjoining defendants as prayed, and for costs, from which decree the defendants Shelton and Cate prayed an appeal to this court. The opinion of the Circuit Court will be found reported in 39 Fed. Rep. 712.

Sections 1 and 2 of the act of the legislature of Tennessee of 1873, entitled "An act to facilitate the collection of revenues," (Laws Tenn. 1873, c. 44, p. 71,) are as follows:

"SECTION 1. That in all cases in which an officer charged by law with the collection of revenue due the State, shall institute any proceeding, or take any steps for the collection of the same, alleged or claimed to be due by said officer, from any citizens, the party against whom the proceeding, or step, is taken shall, if he conceives the same to be unjust, or illegal, or against any statute, or clause of the constitution of the State, pay the same under protest, and upon his making such payment the officer or collector shall pay such revenue into the state treasury, giving notice at the time of payment to the comptroller, that the same was paid under protest; and the party paying said revenue may, at any time within thirty days after making said payment and not longer thereafter, sue the said officer having collected said sum, for the recovery thereof, and the same may be tried in any court having jurisdiction of the amount and parties, and if it be determined that the same was wrongfully collected as not being due from the said party to the State for any reason going to the merits of the same, then the court trying the case may certify of record that the same was wrongfully paid, and ought to be refunded, and thereupon the comptroller shall issue his warrant for the same, which shall be paid in preference to other claims on the treasury.

"SEC. 2. That there shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by said officer under the law, the same being other, or different funds, than such as the taxpayer may tender, or claim the right to pay, than that above provided, and no writ for the prevention of the collection of any revenue claimed,

or to hinder and delay the collection of the same, shall in anywise issue either injunction, supersedeas, prohibition or any other writ or process whatever, but in all cases in which for any reason any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."

*Mr. G. W. Pickle*, Attorney General for the State of Tennessee, and *Mr. W. G. M. Thomas* for appellants.

*Mr. W. W. McFarland* for appellee. *Mr. William Parkin* was with him on the brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The question whether, even if the act under which the tax in question was imposed were unconstitutional and the tax void, complainant on behalf of the express company was entitled to the relief accorded, meets us on the threshold.

It was ruled in *Dows* v. *Chicago*, 11 Wall. 108, 112, that a suit in equity will not lie to restrain the collection of a tax on the sole ground that the tax is illegal, but that there must exist, in addition, special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title of the complainant. And Mr. Justice Field, speaking for the court, said: "The equitable powers of the court can only be invoked by the presentation of a case of equitable cognizance. There can be no such case, at least in the Federal courts, where there is a plain and adequate remedy at law. And except where the special circumstances which we have mentioned exist, the party of whom an illegal tax is collected has ordinarily ample remedy, either by action against the officer making the collection or the body to whom the tax is paid. Here such remedy existed. If the tax was illegal, the plaintiff protesting against its enforcement might have had his action, after it was paid,

against the officer or the city to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection. Nor would he have been compelled to resort to a multiplicity of suits to determine his rights. His entire claim might have been embraced in á single action. We see no ground for the interposition of a court of equity which would not equally justify such interference in any case of threatened invasion of real or personal property."

In *Union Pacific Railway Co.* v. *Cheyenne*, 113 U. S. 516, 525, Mr. Justice Bradley declared that it was "well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation." And he quoted, with approval, the language of Judge Cooley on this subject: "To entitle a party to relief in equity against an illegal tax, he must by his bill bring his case under some acknowledged head of equity jurisdiction. The illegality of the tax alone, or the threat to sell property for its satisfaction, cannot, of themselves, furnish any ground for equitable interposition. In ordinary cases a party must find his remedy in the courts of law, and it is not to be supposed he would fail to find one adequate to his proper relief. Cases of fraud, accident or mistake, cases of cloud upon the title to one's property and cases where one is threatened with irremediable mischief, may demand other remedies than those the common law can give, and these, in proper cases, may be afforded in the courts of equity." Cooley on Taxation, p. 536. The same learned author says, (p. 538:) "When a tax is assessed as a personal charge against the party taxed, or against his personal property, it is difficult to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal and the party makes payment, he is entitled to recover back the amount. The case does not differ in this regard from any other case in which a party is compelled to pay an illegal demand; the illegality alone affords no ground for equitable interference, and the proceedings to enforce the tax by distress and sale can give none, as these only constitute

an ordinary trespass. To this point the decisions are numerous. The exceptions to this rule, if any, must be of cases which are to be classed under the head of irreparable injury."

Irreparable injury is the sole ground upon which jurisdiction in equity can be regarded as invoked in this case. The jurisdictional averments are: "That the property of said United States Express Company in Tennessee is employed in interstate commerce in the said express business, and necessary to the conduct of it; that if seized by the said sheriff it will greatly embarrass the company in the conduct of such business and subject it to heavy loss and damage, and the public served by it to great loss and inconvenience." And "that your orator and the United States Express Company are without adequate remedy at law in the premises."

The latter allegation is a mere matter of inference, and it is necessary that by facts averred or proven the conclusion should be made out. The answer denied, in the language of the previous motion, that any irreparable injury or other ground of equitable jurisdiction was shown in the bill, and asserted that the plaintiff had full, adequate and complete remedy at law under the act of 1873. As the case was tried on bill, answer and replication, it is taking the most favorable course for complainant to determine whether the decree must stand or fall by the averments of the bill alone. But testing it in that way, we do not see how it can be sustained. The trespass involved in the levy of the distress warrants was not shown to be continuous, destructive, inflictive of injury incapable of being measured in money, or committed by irresponsible persons. So far as appeared, complete compensation for the resulting injury could have been had by recovery of damages in an action at law. There was no allegation of inability on the part of the express company to pay the amount of the taxes claimed, nor any averments showing that the seizure and sale of the particular property which might be levied on, would subject it to loss, damage and inconvenience which would be in their nature, irremediable. The bill showed the company to be doing a vast business, and it was an unreasonable inference that it must submit to the sale of its wagons

and horses, or that such sale would work that kind of mischief which justifies the interference of equity in the application of a preventive remedy. Nor did the mere fact that its property might be used in the conduct of interstate commerce give jurisdiction. But in addition to all this, since 1873 there has been a statute in existence in Tennessee, providing a remedy at law, which has been pronounced by this court simple and effective. *Tennessee* v. *Sneed*, 96 U. S. 69. Under that act, where an officer charged by law with the collection of revenue due the State takes any steps for the collection of the same, a party conceiving the tax to be unjust or illegal may pay it under protest, and sue the officer to recover the money back, and if the court determines that it was wrongfully collected, then, upon its certificate to that effect, the comptroller "shall issue his warrant for the same, which shall be paid in preference to other claims on the treasury." And the act further provides that there shall be no other remedy in any case of the collection of revenue, and no writ for the prevention of such collection or to hinder and delay it shall in any wise issue, either injunction, supersedeas, prohibition or any other writ or process whatever.

This act has been sanctioned and applied by the courts of Tennessee. *Nashville* v. *Smith*, 86 Tennessee, 213 ; *Railroad* v. *State*, 8 Heiskell, 663, 804. It is, as counsel observe, similar to the act of Congress forbidding suit for the purpose of restraining the assessment or collection of taxes under the internal revenue laws, in respect to which this court held that the remedy by suit to recover back the tax after payment, provided for by the statute, was exclusive. *Snyder* v. *Marks*, 109 U. S. 189 ; 14 Stat. 152, 475. Legislation of this character has been called for by the embarrassments resulting from the improvident employment of the writ of injunction in arresting the collection of the public revenue; and, even in its absence, the strong arm of the Court of Chancery ought not to be interposed in that direction except where resort to that court is grounded upon the settled principles which govern its jurisdiction.

It is asserted by counsel that a court of equity has jurisdic-

tion to restrain the collection of a tax when the tax is wholly illegal and void, and that such jurisdiction has been uniformly exercised in the Federal courts. *Allen* v. *Balt. & Ohio Railroad*, 114 U. S. 311; *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *Cummings* v. *National Bank*, 101 U. S. 153; and *Dodge* v. *Woolsey*, 18 How. 331, are cited; but the jurisdiction will be found to have rested on other grounds than merely the unconstitutionality of the taxes involved.

In *Allen* v. *Baltimore & Ohio Railroad*, Allen was auditor of public accounts of Virginia, and Hamilton, treasurer of Augusta County, in that State. The auditor had assessed certain railroads upon their real estate, not having any rolling stock, as being in default for non-payment of taxes assessed by the board of public works, and had placed copies of the assessment in the hands of the defendant Hamilton, as treasurer of Augusta County, for collection, in pursuance of which he had levied upon certain cars and locomotives belonging to complainant, and used by it in operating said railroads as lessee, for part of the taxes, and threatened to make further levy upon other cars and engines and sell them for payment of said taxes; and the bill prayed for an injunction on the several grounds of irreparable damage, avoidance of multiplicity of suits, removal of cloud upon title, etc. It was admitted in the case that if the property of the complainant levied on should be sold, great sacrifice and loss must result therefrom, and that the withdrawal of the rolling stock and machinery proposed to be sold would cause serious and prolonged embarrassment to complainant's business; that much delay must accrue before said rolling stock and machinery, if sold, could be replaced; and that it would be difficult, if not impracticable, to ascertain and estimate with even proximate certainty the losses and damages which would result to complainant from the sale, so that although the estate of Hamilton might be sufficient to meet any verdict for damages if the sale should be adjudged to be illegal, the pecuniary value of complainant's losses and damages could not be properly and adequately ascertained and fixed by the verdict of a jury. This admission made a case of irreparable injury.

In *Osborn* v. *Bank of the United States*, the court held that the effect of the law of Ohio in question would be the expulsion of the bank from the State; that the injury done thereby would be in its nature irreparable; and further that as by the amended and supplemental bill it appeared that the money and notes of the bank were in the possession of one of the defendants and kept separate and apart from all other money and notes, the principle of preventing the transfer of a specific article, which if transferred might be lost to the owner, applied.

In *Cummings* v. *National Bank*, the jurisdiction was maintained upon the ground of preventing multiplicity of suits, as well as that the remedy by injunction against an illegal tax was expressly granted by a statute of the State whose levy of taxes was drawn in question.

The ground upon which *Dodge* v. *Woolsey* proceeded was that a stockholder had a remedy in chancery against the directors of his corporation to restrain them from doing acts which would amount to a violation of the charter, or to prevent any misapplication of their capital or profits, which might lessen the value of the shares, if the acts intended to be done amounted to a breach of trust or duty, and that the refusal of the directors to resist the collection of a tax, which they themselves believed to have been imposed upon them in violation of their charter, was in legal effect a breach of trust.

The Circuit Court held the act of 1873 inapplicable to an unconstitutional tax, upon the authority of *Poindexter* v. *Greenhow*, 114 U. S. 270. That was an action of detinue brought by Poindexter, a taxpayer, against Greenhow, treasurer of Richmond, Virginia, for a desk belonging to plaintiff, seized and taken by Greenhow for the purpose of raising the tax claimed to be due from plaintiff after he had tendered coupons in payment thereof in pursuance of the Virginia act of 1871, making the coupons receivable for taxes. In 1882, Virginia passed an act providing that, in case of proceedings instituted against a taxpayer for the collection of his tax, notwithstanding his tender of coupons in payment thereof, he should pay the tax under protest in lawful money, and then

sue the officer for the amount, and if it should be determined that it was wrongfully collected, the amount should be returned,. and that no writ of injunction, supersedeas, mandamus, prohibition or other writ whatever should be issued to hinder or delay the collection of the tax. At the same time several other acts were passed calculated to impede the operation of the act of 1871. This court held that the tender was equivalent to payment; that the taxpayer had the right to stand upon such payment once made; and that the acts of 1882 were unconstitutional so far as they had the effect of depriving the taxpayer of his remedy by detinue, or trespass, or case, or other proper action, for unlawful seizure of his goods after tendering tax-receivable coupons in payment of his taxes. *McGahey* v. *Virginia*, 135 U. S. 662, 675, 676. But this was far from deciding that the remedy for recovery back would not have been sufficient if the validity of the tax had alone been in issue. The question related to the previous contract that the coupons should be receivable for taxes, which contract the subsequent legislation impaired, and its disposition did not involve the application of the act of 1882, under the circumstances existing here. And while an unconstitutional tax may,. in the language of the learned judge holding the Circuit Court, confer no right, impose no duty and support no obligation, it will be perceived that, in our view, the trespass resulting from proceedings to collect such void tax cannot be restrained by injunction where irreparable injury or other ground for equitable interposition is not shown to exist.

We are constrained to hold upon this record that the decree cannot be sustained, and it is therefore

*Reversed and the cause remanded to the court below with a direction to dismiss the bill.*

MR. JUSTICE HARLAN dissented.