## RIEDER et al. v. ROGAN.
### No. 766.

District Court, S. D. California, Central Division.

Oct. 28, 1935.

Claude I. Parker, Ralph W. Smith, Ezra Neff, and J. Everett Blum, all of Los Angeles, Cal., for plaintiffs.

Peirson M. Hall, U. S. Atty., and Clyde Thomas, Asst. U. S. Atty., both of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

By an amended bill of complaint denominated "Amended Bill of Complaint for Injunction and for Declaratory Judgment," the plaintiffs seek to enjoin and restrain the defendant individually and as collector of internal revenue for the Sixth district of California from collecting, or attempting to collect, processing taxes from the plaintiffs and from distraining or seizing the property of the plaintiffs in attempting to enforce the payment of the taxes, and from possessing himself of their property or any of it. A preliminary injunction, pendente lite, is asked.

At the basis of plaintiffs' bill lies the contention that the Agricultural Adjustment Act of May 12, 1933, as amended on June 16, 1933, April 7, 1934, May 9, 1934, June 19, 1934, June 26, 1934, and, finally, on August 24, 1935 (7 USCA § 601 et seq.), is unconstitutional.

The facts set forth in the amended bill of complaint are: The plaintiffs are engaged in the business of buying, at their plant in Los Angeles, Cal., hogs, cattle, and other live stock, of slaughtering them, and converting them into food products and selling the converted food products and packed products to its trade, which is wholly within the state of California. All their purchases, sales, and all their business is transacted in the state of California, and they are not engaged in any interstate commerce or business, either directly or indirectly. There has been levied and assessed against the plaintiffs as a "first domestic processor" of hogs, under the terms of the act and its amendments and the administrative orders of the Secretary of Agriculture, on all hogs slaughtered by it, and they have paid on account of such processing tax to the collector of internal revenue for the Sixth district of California, the total sum of $423,795.32 on account of hogs processed and slaughtered by them. So long as the act and its amendments are in force, there will be levied and assessed against the plaintiffs processing taxes based upon their average monthly slaughter of hogs at the rate of $2.25 per hundred pounds live weight, in the approximate average monthly amount of $15,000. There has been assessed against the plaintiffs a processing tax in the sum of $24,916.79 for the month of April, 1935, and the sum of $22,414.61 for the month of May, 1935; the sum of $21,475.15 for the month of June, 1935; the sum of $20,172.73 for the month of July, 1935; the sum of $18,130.39 for the month of August, 1935; and further assessments will be made in the future during the existence of the act. Upon such assessments being made, the plaintiffs will become liable for their payment, under the penalties of the act for nonpayment.

Briefly stated, the grounds urged for the unconstitutionality of the act are: It amounts to the taking of plaintiffs' property without due process of law in violation of the Fifth Amendment to the Constitution of the United States. It is violative of the Tenth Amendment as being outside of the powers granted to the Congress of the United States. It is violative of article 1, section 8, of the Constitution, in that it is not a tax or a duty or an imposition or an excise. It is unconstitutional, in that it delegates legislative functions to the Secretary of Agriculture. It attempts to regulate intrastate commerce, and, finally, the administration of the act is violative of its provisions.

The special grounds for the intervention of equity are stated in great detail in the amended bill. They will be taken up in detail further on in this opinion.

In addition to permanent injunctive relief, a declaration is sought that the act is unconstitutional and its administration, by the Secretary of Agriculture, illegal and void.

The defendant has filed objection to the granting of a preliminary injunction upon the ground that the Agriculture Adjustment Act, as amended August 24, 1935, prohibits the maintenance in any court of a suit for the purpose of restraining the assessment or collection of taxes involved, that the bill of complaint sets forth no facts which, if true, will entitle the plaintiffs to an injunction, and that the complainants have a plain, adequate, and complete remedy in the ordinary course of law. The defendant has also filed a motion to dismiss the bill based upon the same, and the fol-

lowing additional, grounds: That the United States of America is the real party in interest and it may not be sued without its consent; that there is no actual controversy between the complainants and defendant or between any parties over which the court has jurisdiction under the Declaratory Judgment Act (Jud. Code, § 274d [28 USCA § 400]); that the Declaratory Judgment Act does not authorize the litigation of questions arising under the revenue laws or against the United States; and, particularly, that it does not authorize its use as a means of obtaining injunctive relief; and that the proceeding does not lie either under the Declaratory Judgment Act or the Agricultural Adjustment Act.

It is not necessary to discuss the constitutionality of the act. It is sufficient, for the purpose of determining the questions before us, to indulge in the presumption of constitutionality. The more so as in a case of this character constitutionality may depend upon a factual showing which the bill of complaint does not contain. See Borden's Farm Products Co. v. Baldwin (1934) 293 U. S. 194, 55 S. Ct. 187, 79 L. Ed. 281.

The only question which calls for decision is whether the amended bill of complaint states facts which entitle the plaintiffs to the relief prayed for, and facts justifying our intervention, by injunctive process, pending the trial of the cause.

Generally, the Agricultural Adjustment Act provides for the levying of "processing" taxes at certain rates, among others, upon persons engaged in "first domestic processing," which is defined differently for different branches of agriculture. The processing tax is assessed, levied, and collected as a tax and the proceeds are payable into the Treasury of the United States. From these proceeds certain amounts are paid to persons engaged in agriculture, under various conditions prescribed by the act. These are frankly subsidies or bounties. In its object, the scheme does not differ from many other schemes recognized as sound American governmental policy from the beginning of our government, the object of which is to secure a tax from one group of persons for the direct or indirect benefit of another group. See Magnano Co. v. Hamilton (1934) 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109. The protective tariff is an apt illustration.

Taxes have been levied upon many manufactured products such as cigarettes, gasoline, and the like, without any regard to state boundary lines. The promotion of agriculture has always been recognized as a proper object of American governmental policy. The policy goes back to the Act of 1857, 11 Stat. 226, in which Congress provided for the distribution of cuttings and seeds. The Department of Agriculture was established in 1862. In the same year, provision was made for improving instruction in agriculture throughout the country through the Morrill Lands Grant Act (7 USCA § 301 et seq.). In 1884 the Bureau of Animal Husbandry was established to disseminate information as to domestic animals and their diseases. In 1890 the Weather Bureau was put under the direction of the Department of Agriculture, in order to make readily available information of special value to those engaged in agriculture. Frequent appropriations have been made by the Congress to help eliminate pests which afflict crops. To take care of the unsettled conditions of farm tenures following the war, the Congress established the farm loan banks, with federal funds. The validity of these banks was sustained. Smith v. Kansas City Title & Trust Co. (1920) 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577. It is interesting to note that the man who bore the burden of the defense of that act was the Honorable Charles Evans Hughes, the present Chief Justice. In his brief on the reargument of the case Mr Hughes stated:

"Nothing could better illustrate the accepted principle than the appropriations to aid in agricultural development. Since the year 1839, there has been a constant disbursement of information, distributing seeds, and in aiding agricultural schools."

In the same brief, Mr. Hughes stated the following as a fundamental proposition: "Congress has power to use the public money, and to provide for the borrowing of money, to aid in agricultural development throughout the country in accordance with the systematic and general plan to promote the cultivation of the soil, involving the application of money through loans or otherwise, and that Congress, having this power, could exercise it by the adoption of appropriate means to that end and the creation of instrumentalities for that purpose." See Edward S. Corwin, "The Taxing Power of Congress" (1922) 37 Harvard Law Review, 548; Farnsworth L. Jennings and Robert C. Sullivan, "Legal Planning for Agriculture" (1933) 42 Yale Law Journal, 878.

In the Agricultural Adjustment Act there is no attempt, through the use of taxing power, to regulate the business of the person taxed—attempts of the type which the Supreme Court declared unconstitutional in the Child Labor Act, 40 Stat. 1138 (Bailey v. Drexel Furniture Co. [1922] 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432), or the Future Trading Act, 42 Stat. 187 (Hill v. Wallace [1922] 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822). Nor is there the more direct attempt to regulate intrastate commerce and conditions of labor with which the court dealt in the more recent case of Schechter Poultry Corporation v. United States (1935) 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947. The act does not attempt to regulate farming in the manner sought to be achieved by the National Industrial Recovery Act of June 16, 1933, 48 Stat. 195, which the court denounced in the case just cited. There is no attempt to regulate labor conditions or wages to be paid or methods of sale. The bounties are paid for producing (or not producing) farm products. And they are based upon an attempt to apply to agriculture the principle which heretofore has obtained in industry—that of enacting a tariff that will equalize the cost of production between the home manufacturer and the foreign manufacturer, to protect the home manufacturer against foreign competition. This fundamental policy, which is traceable back to the days of Hamilton, has been defended frankly as a genuinely American protective measure. And those who have sought to reduce the burdens which the tariff places upon the consumer and to advocate a tariff "for revenue only" have been denounced as enemies of the "American plan" for American industry. These facts, known to every school boy who is familiar with American economic and political history, are referred to for the purpose of emphasizing the fact that the policy of the act is in line with our governmental policy. The discussion may seem unnecessary, in view of the declaration that the constitutionality of the act need not be gone into. Nevertheless, in determining whether a cause for the intervention of a court of equity has been stated, it is important to note that the act under discussion does not involve so marked a departure from our governmental policy as to, of itself, challenge the attention of a court of equity. On the contrary, it is an attempt to aid a depressed industry, which did not share even the post-war prosperity.

See 1 Recent Social Trends (1933), 226. The funds for such aid are derived from taxing the processors who use the raw materials of agriculture.

■ Another principle to be borne in mind is that neither the due process clause of the Fifth Amendment nor the Tenth Amendment is a limitation upon the taxing power of the Congress. See McCray v. United States (1904) 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Billings v. United States (1914) 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; Brushaber v. Union Pacific R. Co. (1915) 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; United States v. Doremus (1919) 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493. See, also, Franklin Process Co. v. Hoosac Mills Corporation (D. C. Mass. 1934) 8 F. Supp. 552.

By section 21 (a) of the act, added by the amendment of August 24, 1935, § 30 (7 USCA § 623 (a), it is provided that no suit, action, or proceeding shall be maintained in any court, for the purpose of preventing or restraining any penalty or interest accrued under this title or for obtaining a declaratory judgment.

By various amendments added to sections 15 and 16 of the act (7 USCA §§ 615, 616), provision is made for the presentation, through the Commissioner of Internal Revenue, of claims for refunds, credits, or abatements of the amount of any tax paid under the act. These proceedings, however, are subject to the requirement contained in section 21 (d), 7 USCA § 623 (d) that there be no recovery if the claimant has included the amount of the tax in the price of the article with respect to which it was imposed or of any article processed from the commodity with which it has been imposed or passed on any part of such amount to the vendee or to any other person in any manner or included any part of such amount in the charge or fee for processing and that the price paid by the claimant or such person was not reduced by any part of such amount.

■ Irrespective of statutory enactment, it is a fundamental principle of law that no injunction will be granted to restrain the enforcement and collection of a tax upon the mere ground of illegality. To warrant the intervention of equity, there must be presented to the court facts which show fraud, the creation of a cloud upon title to real property, or other acts showing the need

312

for equity's intervention by reason of the inadequacy of an action at law. In the absence of such showing, the taxpayer is relegated to his remedy at law for the recovery of the tax. If the taxing statute makes no provision for recovery from the governmental body direct, the right of recovery from the official who collected it will be inferred by the courts.

These principles are well established in federal courts. The locus classicus is Dows v. City of Chicago (1870) 11 Wall. 108, 110, 20 L. Ed. 65, where Mr. Justice Field stated: "No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked."

In Union Pacific Railway Co. v. Cheyenne (1885) 113 U. S. 516, 5 S. Ct. 601, 605, 28 L. Ed. 1098, it is said: " *'The illegality of the tax alone, or the threat to sell property for its satisfaction, cannot, of themselves, furnish any ground for equitable interposition.* In ordinary cases a party must find his remedy in the courts of law, and it is not to be supposed he will fail to find one adequate to his proper relief. Cases of fraud, accident, or mistake, cases of cloud upon the title to one's property, and cases where one is threatened with irremediable mischief, may demand other remedies than those the common law can give, and these, in proper cases, may be afforded in courts of equity.' This statement is in general accordance with the decisions of this court as well as of many state courts. Dows v. Chicago, 11 Wall. [108] 109 [20 L. Ed. 65]; Hannewinkle v. Georgetown, 15 Wall. [547] 549 [21 L. Ed. 231]; State Railroad Tax Cases, 92 U. S. 575, 612, 613 [23 L. Ed. 663], and cases there cited." (Italics added.) See, also, Milwaukee v. Koeffler, (1886) 116 U. S. 219, 6 S. Ct. 372, 29 L. Ed. 612; Pacific Express Co. v. Seibert (1892) 142 U. S. 339, 12 S. Ct. 250, 35 L. Ed. 1035; Boise Artesian Water Co. v. Boise City (1909) 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796.

■ In sum, the principles declared in these cases are: Mere illegality or unconstitutionality of a tax is not ground for the intervention of a court of equity. On the other hand, if the illegal tax is such that its enforcement may result in clouding title to real property or interfere with trust relationships or its enforcement result in multiplicity of suits, equity may intervene, especially if there is no adequate remedy at law provided. Conversely, however, if an adequate scheme has been provided in the tax measure itself or elsewhere for the recovery of the tax and none of the elements discussed above be present, equity will not intervene.

■ If the allegations of the amended bill of complaint are tested by the rules laid down in these cases, they fall far short of stating grounds for equity's intervention through injunctive process. Leaving out of consideration, for the present, the discussion of the alleged inadequacy of the recovery provisions and the alleged multiplicity of suits to be avoided by the injunction, it is alleged that a lien has been filed against the unpaid taxes and additional liens will be filed in the future; that such liens are attached to the plaintiffs' inventory and will hamper the sale of the inventory; that a warrant of distraint has been levied and demand has been made on plaintiffs' bank for a sum equal to the amount of the taxes, and the defendant will continue to levy warrants against the property, and, in order to do so, will trespass upon the property; that breaches of peace might result from such attempts; and that the defendant's agents have not financial responsibility equal to the value of the plaintiffs' property and there is no way to recoup their loss or their damages. These allegations show certain inconveniences to which the recalcitrant taxpayer is and will be subjected in case he chooses not to pay taxes. They are no greater under this act than under other acts, both state and federal, which the courts have had under consideration. At most, they are merely those *incidental* to the trespass of the officers in attempting to collect the tax. Such trespass has been held insufficient to justify the intervention of a court of equity. See Shelton v. Platt (1891) 139 U. S. 591, 11 S. Ct. 646, 648, 35 L. Ed. 273.

There is no showing that the refusal to pay the tax would subject the plaintiffs to any personal restraint or, as might be the case with respect to persons occupying fiduciary or trust relations, would subject them to double liability, or to lawsuits upon

the part of those for whom they are trustees.

Here, the plaintiffs are partners. The property they are dealing with is their own. The money which they may pay out as taxes or otherwise, they do not have to account for to any one. No stockholder or beneficiary may call them to account.

■ The act has provided a scheme for the recovery of these taxes in case the law should be declared unconstitutional. The fact (alleged in the bill) that the Congress had made no appropriation to take care of refunds is not a ground for equity intervention. The amount will not be payable until the right to the refund has been established, and we know it to be ordinary congressional practice to provide, through various deficiency appropriations, for the payment of debts of the government for which no previous provision has been made. In the instant case, the provision for refund through the machinery provided by law seems to be the only one which is fair to the taxing power. The right to recover is made, under the statute, dependent upon a showing that the taxpayer has not passed on the tax, through various devices, to the ultimate consumer. In other words, before the taxpayer can recover the amount of his tax, he must satisfy the Commissioner of Internal Revenue that by the payment of the tax he has suffered damage. If he has passed on this tax to others, he cannot be said to have paid out his own money, and therefore is not entitled to recover. In a suit in equity, of the character under consideration, the defendant could not defend upon that ground. If the act be declared unconstitutional, the taxpayer, assuming that he has passed on the tax to others, would be allowed to enrich himself at the expense of others. The method provided by the Congress seems equitable if the interest of every one be considered. And we must take this fact into consideration, in view of the policy declared in the cases just cited, that except in extreme cases the equity power of the courts shall not be used in matters of taxation.

■ Section 21 (a) of the act as added in 1935 (7 USCA § 623 (a) reads:

"Sec. 21. (a) No suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assessment or collection of any tax imposed or the amount of any penalty or interest accrued under this title [chapter] on or after the date of the adoption of this amendment [August 24, 1935], or (2) of obtaining a declaratory judgment under the Federal Declaratory Judgments Act [section 400 of Title 28] in connection with any such tax or such amount of any such interest or penalty. In probate, administration, receivership, bankruptcy, or other similar proceedings, the claim of the United States for any such tax or such amount of any such interest or penalty, in the amount assessed by the Commissioner of Internal Revenue, shall be allowed and ordered to be paid, but the right to claim the refund or credit thereof and to maintain such claim pursuant to the applicable provisions of law, including subsection (d) of this section, may be reserved in the court's order."

We are of the view that this provision also stands in the way of the granting of injunctive relief. It is contained in a section which, together with sections 15 and 16 of the act, provides an exclusive remedy for the recovery of taxes paid under the act. These sections evidence, not only the intention of the Congress to make the remedy exclusive, but also the intention to give the taxpayer suing for recovery the benefit of all the provisions in other statutes, which are necessary to make the proceedings complete and effective. A study of the provisions which these sections incorporate show a complete scheme from the moment of the filing of the claim to its payment. They even insure the payment by the Treasury of the United States of personal judgments recovered against tax officers by reason of their collection of this tax.

Such provisions are a recognized legislative practice in our history. They have been given full force and effect by our courts. Our constitutional system is based upon the proposition that the sovereign cannot be sued without his consent. This flows from the principle that no right of action arises in favor of an individual against the sovereign for injury suffered through the exercise of purely governmental powers. This principle has never been departed from except in so far as courts have drawn the distinction between functions which are governmental and functions which are proprietary and have relaxed the rule as to proprietary functions. Taxation is and al-

ways has been considered the exercise of not only the highest, but the most essential, attribute of sovereignty. See Cheatham v. United States (1875) 92 U. S. 85, 23 L. Ed. 561. Because of this, effect has been given to provisions such as were enacted by the amendment of August 24, 1935.

In the State Railroad Tax Cases (1875) 92 U. S. 575, 576, 613, 23 L. Ed. 663, the court gave effect to a provision in a state statute prohibiting actions to enjoin the collection of taxes. So doing, it referred to the practice which obtained even then in certain branches of federal taxation. Said the court:

"It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity. Mooers v. Smedley, 6 Johns. Ch. [N. Y.] 28; Dodd v. Hartford, 25 Conn. [232] 239; Greene v. Mumford, 5 R. I. [472] 478 [73 Am. Dec. 79]; Messeck v. Supervisors of Columbia, 50 Barb. [N. Y.] 190; Dows v. Chicago, 11 Wall. 108 [20 L. Ed. 65]; Hannewinkle v. Georgetown, 15 Wall. [547] 548 [21 L. Ed. 231].

"The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid.

"That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867 [14 Stat. 475, § 10], that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.' Rev. Stat. sec. 3224 [26 USCA § 1543]. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case,* interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice. See Cheatham v. Norvekl [92 U. S. 85, 23 L. Ed. 561] decided at this term; Nichols v. United States, 7 Wall. 122 [19 L. Ed. 125]; Dows v. Chicago, 11 Wall. 108 [20 L. Ed. 65]."

Later, this provision of the Internal Revenue Act referred to in the opinion just cited came before the court in Snyder v. Marks (1883) 109 U. S. 189, 3 S. Ct. 157, 159, 27 L. Ed. 901. It had been replaced by an amendment (14 Stat. 475, § 10) to the Internal Revenue Act of July 13, 1866, 14 Stat. 152, which read: "And no suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court."

It was later re-enacted as section 3224 of the Revised Statutes (26 USCA § 1543).

Holding that this enactment prohibited the granting of relief by injunction, the court said: "The statute clearly applies to the present suit, and forbids the granting of relief by injunction."

Amplifying this statement, the court, further on in the opinion, said:

"The inhibition of section 3224 applies to all assessments of taxes, made under color or of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. *The remedy so given is exclusive, and no other remedy can be substituted for it.* Such has been the current of decisions in the circuit courts of the United States, and we are satisfied it is a correct view of the law. Howland v. Soule [Fed. Cas. No. 6,800] Deady, 413; Pullan v. Kinsinger [Fed. Cas. No. 11,463] 2 Abb. U. S. 94; Robbins v. Freeland [Fed. Cas. No. 11,883] 14 Int. Rev. Rec. 28; Delaware R. Co. v. Prettyman [Fed. Cas. No. 3,767] 17 Int. Rev. Rec. 99; United States v. Black [Fed. Cas. No. 14,600] 11 Blatchf. [538] 543; Kissinger v. Bean [Fed. Cas. No. 7,853], 7 Biss. 60; U. S. v. Pacific Railroad [Fed. Cas. No. 15,983] 4 Dill. [66] 69; Alkan v. Bean [Fed. Cas. No. 202] 23 Int. Rev. Rec. 351; Kensett v. Stivers [(C. C. A.) 10 F. 517] 18 Blatchf. 397. In Cheatham v. United States, 92 U. S. 85, 88 [23 L. Ed. 561], and

again in State Railroad Tax Cases, 92 U. S. 575, 613 [23 L. Ed. 663], it was said by this court that the system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures, not judicial, to collect them, with appeals to specified tribunals, and suits to recover back moneys illegally exacted, was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues. In the exercise of that right it declares, by section 3224, that its officers shall not be enjoined from collecting a tax claimed to have been unjustly assessed, when those officers, in the course of general jurisdiction over the subject-matter in question, have made the assessment and claim that it is valid." (Italics added.)

The principle was again given recognition in Shelton v. Platt, supra, involving a similar provision in a tax statute of the state of Tennessee. Said the court:

"This act has been sanctioned and applied by the courts of Tennessee. City of Nashville v. Smith, 86 Tenn. 213, 6 S. W. 273; Louisville Railroad Co. v. State, 8 Heisk. [Tenn.] 663, 804. It is, as counsel observe, similar to the act of congress forbidding suit for the purpose of restraining the assessment or collection of taxes under the internal revenue laws, in respect to which this court held that the remedy by suit to recover back the tax after payment, provided for by the statute, was exclusive. Snyder v. Marks, 109 U. S. 189, 3 S. Ct. 157 [27 L. Ed. 901]; 14 Stat. 152, 475. Legislation of this character has been called for by the embarrassments resulting from the improvident employment of the writ of injunction in arresting the collection of the public revenue; and, even in its absence, the strong arm of the court of chancery ought not to be interposed in that direction, except where resort to that court is grounded upon the settled principles which govern its jurisdiction."

While in Pacific Steam Whaling Co. v. United States (1903) 187 U. S. 447, 448, 23 S. Ct. 154, 156, 47 L. Ed. 253, the court did not have before it a tax statute providing for an exclusive remedy for recovery, in the discussion the court referred to this method. It also laid down the principle that, where the statute is silent as to the remedy to be pursued to recover an illegal tax, courts will infer the right to recover it from the official collecting it. The language of the court contains so succinct a statement of the principles we have been discussing that we reproduce it:

"It is said that unless this application can be sustained the petitioner is without remedy, and that there is no wrong without a remedy. While, as a general statement, this may be true, it does not follow that it is without exceptions, and especially does it not follow that such *remedy must always be obtainable in the courts. Indeed, as the government cannot be sued without its consent, it may happen that the only remedy a party has for a wrong done by one of its officers is an application to the sense of justice of the legislative department.* Still, we must not be understood as deciding that the only remedy in this case was an appeal to Congress. It was held in Elliott v. Swartwout, 10 Pet. 137 [156], 157, 9 L. Ed. 373, 381, that, under the law as it stood at that time, Congress having made no special provision, where a collector had charged excessive duties, and the party paying them, in order to get possession of his goods, accompanied the payment by a declaration to the collector that he intended to sue him to recover back the amount erroneously paid and by a notice not to pay it over to the Treasury, an action could be maintained against the collector for the excessive charge. The court said that the question as to the right to recover must be answered in the affirmative, 'unless the broad proposition can be maintained that no action will lie against a collector to recover back an excess of duties paid him; but that recourse must be had to the government for redress. Such a principle would be carrying an exemption to a public officer beyond any protection sanctioned by any principles of law or sound public policy.' See, also, Cary v. Curtis, 3 How. 236, 11 L. Ed. 576; Curtis' Adm'x v. Fiedler, 2 Black, 461, 17 L. Ed. 273. In Erskine v. Van Arsdale, 15 Wall. 75, page 77, 21 L. Ed. 63, a case of internal revenue taxes, it was said by Chief Justice Chase:

" 'Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal and that suit will be instituted to compel the refunding of them.' " (Italics added.) See Matthews v. Rodgers (1932) 284 U. S. 521, 528, 52 S. Ct. 217, 76 L. Ed. 447.

The foregoing cases have been followed consistently in later years. In Dodge v. Osborn (1916) 240 U. S. 118, 36 S. Ct. 275, 276, 60 L. Ed. 557, the court, referring to the inhibition contained in the internal revenue statute, stated: "It is no longer open to question that a suit may not be brought to enjoin the assessment or collection of a tax because of the alleged unconstitutionality of the statute imposing it." And see Dodge v. Brady (1916) 240 U. S. 122, 36 S. Ct. 277, 60 L. Ed. 560; Bailey v. George (1922) 259 U. S. 16, 42 S. Ct. 419, 66 L. Ed. 816; Child Labor Tax Case (1922) 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432.

In Miller v. Standard Nut Margarine Co. (1932) 284 U. S. 498, 52 S. Ct. 260, 263, 76 L. Ed. 422, the Supreme Court held that statutory enactments prohibiting the staying of the hand of taxing powers by injunctive processes must be interpreted in the light of the equity principle which courts had applied prior to their enactment. Said the court:

"Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became Rev. St. § 3224 (26 USCA § 154 [26 USCA § 1543]), this court, in harmony with the rule generally followed in courts of equity, held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; State R. Tax Cases, 92 U. S. 575, 614, 23 L. Ed. 663. Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. Cumberland Telephone & Telegraph Co. v. Kelly, 87 C. C. A. 268, 160 F. 316, 321, 15 Ann. Cas. 1210; Baker v. Baker, 13 Cal. 87, 95; Bradley v. People, 8 Colo. 599, 604, 9 P. 783; 2 Sutherland (2d Lewis Ed.) § 454. The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require *specific language* undoubtedly disclosing that purpose, to warrant the inference that Congress intended to abrogate that salutary and well-established rule. This court has given effect to section 3224 in a number of cases. Snyder v. Marks, 109 U. S. 189, 191, 3 S. Ct. 157, 27 L. Ed. 901 [902]; Dodge v. Osborn, 240 U. S. 118, 121, 36 S. Ct. 275, 60 L. Ed. 557 [559]; Dodge v. Brady, 240 U. S. 122, 36 S. Ct. 277, 60 L. Ed. 560. It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable." See, also, United States v. Jefferson Electric Manufacturing Co. (1934) 291 U. S. 386, 54 S. Ct. 443, 78 L. Ed. 859, in which the Court had under consideration a provision in the Revenue Act of 1924, 43 Stat. 253, making the claim for refund dependent upon proof that the tax had not been passed on to the consumer.

Dodge v. Brady, supra, Bailey v. George, supra, and Miller v. Standard Nut Margarine Co., supra, hold that, if extraordinary and exceptional circumstances were averred, the court might take jurisdiction despite the inhibition of the statute. In some of the earlier of these cases the statement was more in the nature of a concession, for the sake of the argument. See Dodge v. Osborn, supra, 240 U. S. 118, at page 121, 36 S. Ct. 275, 60 L. Ed. 557. However, granted that these cases do hold that equity will entertain suits notwithstanding statutory provisions against their institution, the only circumstances under which they will entertain them are those set forth in the group of cases heretofore discussed, beginning with Dows v. City of Chicago, supra. The principles just discussed have received recognition in our own circuit in the case of Fisher Flouring Mills Co. v. Vierhus (C. C. A.) 78 F.(2d) 889, and allied cases, decided August 15, 1935. The effect of this decision is not nullified by the companion case, Merchants' Packing Co. v. Rogan (C. C. A.) 79 F.(2d) 1, and allied cases, decided September 24, 1935.

As we understand the latter decision, the court below had granted a temporary injunction. After the decision in the Fisher

Flouring Mills Company Case, it vacated the injunction and denied an application for a supersedeas pending appeal. The basis for the ruling was that the decision in the Fisher Flouring Mills Case made the previous granting of the injunction erroneous. Upon this showing the Circuit Court of Appeals granted a supersedeas and an injunction.

■ We do not think that this decision deprives trial judges of the discretionary power to issue temporary injunctions in processing tax cases. Rather are we of the view that the court was confronted with a situation where it found that the trial court had declined to exercise its discretion upon a ground not warranted by law. It has been held repeatedly that, while a reviewing court will not interfere with the discretion exercised by a trial court, where, however, in exercising the discretion or in declining to exercise it, the trial court places its action upon a ground not sanctioned by law, the reviewing court will interfere. See People v. Jones (1927) 87 Cal. App. 482, 262 P. 361; People v. Freithofer (1930) 103 Cal. App. 165, 284 P. 484; People v. Miller (1931) 112 Cal. App. 535, 297 P. 40.

We now consider the remaining allegations of the amended bill of complaint in the light of the principles just discussed.

The difficulties of proving that the tax actually resulted in a loss to the plaintiffs are stressed as a ground for the illusoriness of the remedy. The difficulties have been stated with elaboration in the amended bill of complaint as a basis for the contention that the remedy provided in the statute is inadequate. In substance, they are: When paid by the plaintiffs, the taxes become a part of the cost to them of the product which they ultimately sell to the customer. In the processing of hogs, the hogs are divided into numerous and separate portions and products, some of which are pickled and some smoked and others go through other processes. Some are sold as fresh meat. A portion of the carcasses are converted into sausages by using pork trimmings, in the manufacturing of which meat products are used which are free from the tax imposed by the act. For this and other reasons it is impossible to set up a system of accounting which would allocate the proportion or part of the processing tax on the live weight of the hog before the processing. The hogs are sold in the open market in competition with other processors and with meat products which are tax free under the act. The processing tax is not carried as an item on the invoice, and, for this and other reasons, it would be impossible to allocate any particular part of the tax or to do it accurately, and the penalties of section 20 of the act, as added by Act May 9, 1934, § 16 (7 USCA § 620), might be incurred. There is no provision in the act allowing the price received by the plaintiffs upon the sale of their products to be allocated first to the reimbursement of the plaintiffs of their costs other than taxes or to be prorated to all costs equally. It would be impossible, from an accounting and operating standpoint, to establish in the case of any particular portion or quantity of pork products whether the tax with respect thereto was or was not passed on by the plaintiffs to their customers or to their vendors.

The bill also states that, as an accounting and operating matter, it is likewise impossible to determine whether the tax was passed to the vendee or passed back to the vendor; that such an attempt would result in speculation and conjecture; that the processing tax is levied upon the live weight of the hog, but that the pork products, derived from the hog, are sold at variable periods varying from four days to six or eight months. For these reasons, also, it is alleged, the requirements of section 21 (d) of the act, as added in 1935 (7 USCA § 623 (d) could not be met.

Section 267 of the Judicial Code (28 USCA § 384) reads: "Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

■ In determining whether the remedy provided by law is adequate, the test is this: The remedy at law must be as complete, practical, and efficient to the ends of justice and its pending administration as a remedy in equity. See Union Pacific Railroad Co. v. Weld County (1918) 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Fredenberg v. Whitney (D. C. Wash. 1917) 240 F. 819; Standard Oil Co. of Kentucky v. Atlantic Coast Line R. Co. (D. C. Ky. 1926) 13 F. (2d) 633.

One would gather from the statement of the difficulties in the amended bill of complaint and in the oral argument that the difficulties are insuperable. Yet the bill states: "That when paid by plaintiffs said taxes become part of the cost to them of the

product which they ultimately sell to their customers."

It would seem to us that, with the high development of cost accounting at the present time, it should not be difficult to trace that initial cost. We take judicial notice of the fact that modern systems of accounting have become so accurate that manufacturers are able to trace, in industrial establishments of the most complex character (such as automobile plants), the approximate cost of every process or every part of process which goes into the making of the whole product. Evidence of expert cost-accountants is often received in court. That such a system might be readily applied to the proof in recovery cases is also evidenced by the fact that the Treasury Department in its circular dated January 25, 1935, denominated T. D. 4518, has set up a method of tracing processing taxes to the various products involved in hog processing. This indicates that it is possible to trace the processing tax to the various ultimate products.

It is true, as claimed by the plaintiffs, that, where the damage is impossible to prove or cannot be accurately computed or the amount cannot be adequately proved, the remedy at law will not be considered adequate. See 32 Cor. Jur. 62, 63; Texas Co. v. Central Fuel Oil Co. (C. C. A. 8th Cir. 1912) 194 F. 1. But mere difficulty in proving damages does not destroy the effectiveness of a remedy at law, so as to justify the intervention of a court of equity. See United States v. Bitter Root Co. (1906) 200 U. S. 451–472, 26 S. Ct. 318, 50 L. Ed. 550. As said by Mr. Justice Holmes in Curriden v. Middleton (1914) 232 U. S. 633, 34 S. Ct. 458, 58 L. Ed. 765: "Mere complication of facts alone and difficulty of proof are not a basis of equity jurisdiction." And see Burnet v. Houston (1931) 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991.

But assuming that the difficulties are insuperable, then the most that can be claimed is that the requirement, being impossible of being complied with, is invalid. The requirement is contained in section 21 (d) of the act, which is severable from the remainder of the act. If it falls because of impossibility of compliance, then the right to the recovery of the taxes, provided for in sections 15, 16, and other portions of the act, becomes absolute. There is brought into play the principle that, if by severing an invalid provision, a "workable plan" still remains, the statute stands. See Dorchy v. Kansas (1924) 264 U. S. 286, 44 S. Ct. 323, 68 L. Ed. 686; Weller v. New York (1925) 268 U. S. 319, 45 S. Ct. 556, 69 L. Ed. 978; Hill v. Wallace (1922) 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822. The act also has a "separability" clause (7 US CA § 614). So the problem is reduced to this: If the hardships of which the plaintiffs complain are insuperable, the right of recovery becomes absolute. If they are not, we are merely confronted with a difficulty of proof. In either event, the ground for equity's intervention upon the score of hardship disappears. In the last analysis, in dealing with the adequacy of a particular remedy, the *object* sought to be attained is to be borne in mind. Often the matter is complicated by that very fact. If the object be to protect real property or rights arising from the ownership of trade-marks, copyrights, or the like, money may be an unimportant objective, as money judgments may afford slight protection in such cases. But, when the sole object to be attained is merely the recovery of money paid as a tax, in determining whether a remedy is adequate, this fact must be borne in mind. And the test to be applied is: Is provision made, through a remedy at law, for the recovery of the money? If it is, the test of adequacy has been met.

In our opinion, the provisions under discussion meet this test.

It is insisted, however, that a court of equity should intervene in order that a multiplicity be avoided.

The need to avoid multiplicity of actions is a common ground for the intervention of a court of equity. See cases cited, supra, and Hill v. Wallace (1922) 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Lee v. Bickell (1934) 292 U. S. 415, 54 S. Ct. 727, 78 L. Ed. 1337.

It is insisted that multiplicity of suits would arise for two reasons. The first of these is that, by reason of the processing tax being a monthly tax, the plaintiffs would have to file a claim for refund for each monthly tax paid. Each such claim for refund, it is argued, would give rise to a right of action, against which the statute of limitations would begin running from the date of payment. In each such case, the defendant would be required to prove that he did not absorb the tax paid for that month. A different individual judgment would have to be rendered upon the record made in each case as the proof might differ from month to month.

But this argument overlooks the fact that multiplicity does not exist when it consists merely of a series of suits by the same person, involving the same question, in any one of which suits the matter at issue could be determined. As said in Boise Artesian Water Co. v. Boise City (1909) 213 U. S. 276, at page 286, 29 S. Ct. 426, 430, 53 L. Ed. 796: "Where the multiplicity of suits to be feared consists in repetitions of suits by the same person against the plaintiff for causes of action arising out of the same facts and legal principles, a court of equity ought not to interfere upon that ground unless it is clearly necessary to protect the plaintiff from continued and vexatious litigation. Something more is required than the beginning of a single action with an honest purpose to settle the rights of the parties. 1 Pom. Eq. Jur. 3d Ed. § 254. Perhaps it might be necessary to await the final decision of one action at law (see, for analogies, Sharon v. Tucker, 144 U. S. 533, 12 S. Ct. 720, 36 L. Ed. 532; Boston, etc., Mining Co. v. Montana Ore Co., 188 U. S. 632, 23 S. Ct. 434, 47 L. Ed. 626), but that we need not decide."

Our own Circuit Court of Appeals in Fisher Flouring Mills Co. v. Vierhus, 78 F.(2d) 889, held that the rights of the taxpayer under the present act are fully protected, and that, as he need not sue "for the taxes monthly, but may seek to recover a lump sum," true multiplicity of suits cannot arise.

 The second theory upon which it is claimed an injunction would prevent multiplicity of suits is that the officers of the law in their attempt to enforce its provisions will commit actions of trespass against the property of the plaintiff, should it refuse to pay the monthly sums assessed. For each of these trespasses, it is claimed, the plaintiffs would have an independent action at law. These trespasses, being only such as are involved in the levying of the distress warrants, are an insufficient ground for equity's intervention. See Shelton v. Platt, supra; Dalton Adding Machine Co. v. Virginia (1915) 236 U. S. 699, 35 S. Ct. 480, 59 L. Ed. 797.

"The mere fact that the validity of the tax may be tested more conveniently by a bill in equity than by an action at law does not justify resort to the former." Henrietta Mills v. Rutherford County (1930) 281 U. S. 121, 122, 124, 50 S. Ct. 270, 271, 74 L. Ed. 737. And see, Broderick v. American General Corporation (C. C. A. 4th Circuit 1934) 71 F.(2d) 864, 870, 94 A. L. R. 1359.

So it is evident that we are confronted here with a situation wherein the attack of the plaintiffs upon the constitutionality of the act under which the particular tax is being assessed and levied can be tested and determined in one action. The consideration which governs courts of equity in intervening in order to prevent multiplicity of suits does not, therefore, enter here. Nor is there present the question which in some later cases (such as Hill v. Wallace, supra, Lee v. Bickell, supra) determined the courts to intervene; namely, the question of the applicability of the act to the particular litigant.

Tested by the rules declared in the decisions which we have discussed fully in what precedes, the amended bill of complaint does not state grounds for our intervention.

 Strength is added to this conclusion by the fact that section 21 (a) of the act prohibits, not only the institution of suits, actions, or proceedings aiming to prevent or restrain the assessment or collection of taxes under the act, but also suits, actions, or proceedings seeking, in connection with such taxes, declaratory judgments under the Federal Declaratory Judgments Act. The act referred to is section 274d of the Judicial Code (28 USCA § 400). Subdivision (1) of the section reads:

"(1) In cases of actual controversy the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings *to declare rights* and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such." (Italics added.)

Statutes of this character, being remedial, are interpreted very liberally. The Supreme Court, in interpreting the phrase "to declare rights" found in the Declaratory Judgments Act of the state of Tennessee (Pub. Acts 1923, c. 29), has held that it would justify the institution of an action seeking an adjudication as to the constitutionality of a tax. Nashville, C. & St. L. R. Co. v. Wallace (1933) 288 U. S. 249, 260–266, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191. And see Edwin Borchard, Declaratory Judgments (1934) pp. 348–349, and

cases cited in notes 159 to 163. That it is within the power of the Congress to determine how the government shall be sued in matters arising out of the exercise of the taxing power cannot be questioned. As said in Cheatham et al. v. United States (1875) 92 U. S. 85, 88, 89, 23 L. Ed. 561:

"It will be readily conceded, from what we have here stated, *that the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues.*

"If there existed in the courts, State or National, any general power of impeding or controlling the collection of taxes, or relieving the hardship incident to taxation, the very existence of the government might be placed in the power of a hostile judiciary." (Italics added.)

The Supreme Court, in the cases already referred to, has held repeatedly that, where a statute provides a method for the recovery of a tax, in case of illegality, the remedy is exclusive. The court has found no difficulty, when the matter has been presented to it, of upholding such remedy as adequate. See Shelton v. Platt, supra; Henrietta Mills v. Rutherford County (1930) 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737.

These considerations, and the fact that the inhibitions of the Fifth and Tenth Amendments to the Constitution of the United States do not (*except in rare and special instances*) constitute a limitation upon the taxing power of the United States (see Brushaber v. Union Pacific R. Co., supra; Magnano Co. v. Hamilton, supra, 292 U. S. 40, at page 44, 54 S. Ct. 599, 78 L. Ed. 1109), lead to the conclusion that the Congress of the United States, having provided an exclusive method for the recovery of taxes paid under this act, could constitutionally prohibit resort to the federal courts, through suits for injunction or actions in declaratory relief, aiming to question the constitutionality of the act.

There is a direct intimation in Miller v. Standard Nut Margarine Co., supra, that the Congress could, by the use of "specific language," abrogate the exception which the court has read into such statutory enactments, in later years, so as to allow equity suits, under extraordinary circumstances, despite the statutory inhibition.

In section 21 (a), as added in 1935 (7 USCA § 623 (a), the Congress used such "specific language," when it forbade not only resort to suits for injunction, but to actions for declaratory judgments, as well. It thus denied resort to the two broadest remedial powers available to the litigant in federal courts. Perhaps such actions upon the part of the taxing power might not conform to some abstract ideas of justice. But the necessities of government, which the Supreme Court has recognized in these cases, beginning with Cheatham v. United States, supra, require that the question be determined in the light, not of abstract principles of justice, but of concrete facts in a realistic world. And courts, in interpreting the action of the taxing power, must be pragmatic. They cannot close their eyes to the fact adverted to by the court in the Cheatham Case that "*all governments, in all times, have found it necessary to adopt stringent measures for the collection of taxes, and to be rigid in the enforcement of them.*"

Ideal, abstract justice is a heavenly, not a human, attribute. And, while we might question the wisdom of the Congress, we cannot question its right. The conclusion reached makes it unnecessary to consider any other points.

Upon the whole, we are of the view that the amended bill of complaint does not state facts entitling the plaintiffs to the relief asked, either in equity or by way of declaratory relief; that the Agricultural Adjustment Act has provided an exclusive and adequate remedy for the recovery of taxes paid under it, should the law be declared unconstitutional or its administration illegal; and that the bill does not state facts entitling the plaintiffs to an injunction pendente lite.

A preliminary injunction will therefore be denied and the bill dismissed for want of equity. Plaintiffs may have ten days in which to amend the bill, if so advised. An exception to each of the rulings made is allowed.